## NIXON v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
December 9, 1929.

No. 5814.

George Grigsby and Patrick Gildea, both of Ketchikan, Alaska, for appellant.

Howard D. Stabler, U. S. Atty., of Juneau, Alaska.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. Appellant was convicted upon a charge of possessing intoxicating liquor contrary to the Alaska Prohibition Law (48 USCA §§ 261–291). His principal assignments of error involve the question whether or not, to his prejudice, the court received evidence unlawfully procured by the officers in searching a room occupied by him as a residence. Touching the material facts there is no controversy. He was living in room No. 29 of the Ketchikan Hotel, Ketchikan, Alaska. Across the hallway directly opposite 29 was room No. 35. On September 24, 1928, a United States commissioner issued to the United States marshal a search warrant in due form directing

him to make search of the two rooms for alcoholic liquors. It recites that, "Proof by affidavit having this day been made before me by E. M. Harrold stating facts from which it appears," etc. No reference is therein made to any other affidavit or evidence. The Harrold affidavit so referred to purports to have been made on September 23, and states positively that on that date in room 29 of the Ketchikan Hotel the appellant sold to Harrold a pint flask of whisky for $2.50, there being present also a young man named Al Nixon, who, it turns out, is appellant's son, and that appellant got the whisky from the opposite room. The affidavit is sworn to, not before the commissioner, but before a notary public, and it is conceded that Harrold never appeared before the commissioner. The record also exhibits another affidavit sworn to on September 24 before the commissioner, by C. V. Brown, a deputy marshal; but, as already stated, this is in no way mentioned in the warrant. Without indicating the sources of knowledge, it categorically states that "on the 23rd day of September, 1928, Harry Nixon sold to E. M. Harrold a pint flask of whisky for which said E. M. Harrold paid said Nixon the sum of $2.50."

■ The statute authorizing search warrants in such cases provides that: "The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them." 40 Stat. 228 (18 USCA § 614). The government concedes that under this provision a notary public has no authority to take the evidence, and that therefore Harrold's affidavit could not serve as the basis for the issuance of a warrant. Whether, in view of the fact that Brown's affidavit does not upon its face purport to explain the source of his knowledge or information, it could be held to constitute a sufficient showing, we need not decide, for it does not appear that the commissioner so treated it or gave it consideration. In referring only to the Harrold affidavit, by implication the warrant would seem to negative the assumption that the Brown affidavit was considered. We therefore feel constrained to hold that the warrant was void.

It is, however, argued that without a warrant the officers were within the law in making the seizures of which appellant complains. It seems that armed with the warrant the officers first went to room 29. Appellant was not present at any time during the search, but they found his son, Al Nixon, lying on the bed. Upon a search they found three small glasses, two large drinking glasses, and some corks in a cigarette container, but no liquor of any kind. They then went to room 35, to which they were admitted by the hotel proprietress, and there they found six dozen bottles labeled Canadian beer and twelve bottles of Scotch whisky, a cork screw, funnel, a bag of corks, a bag of empty beer bottles, and a number of flasks. Thereupon they went back to room 29, put Al Nixon under arrest, and upon searching him found a small amount of money and a key to room 29. Upon a further search of the room then made, they found near the head of the bed, between the spread and a blanket, a key to room 35. All of the articles so found in both rooms were put in evidence.

■ Having disclaimed occupancy of room 35 or any interest in what was found therein, appellant could not be heard to object to the search and seizure in respect thereto. And by the articles first found in room 29, even though erroneously admitted, it could hardly be said he was prejudiced. But manifestly to connect him with what was found in 35 for the possession of which he was convicted, other evidence was required; and accordingly the government produced as a witness the proprietress, who testified that during the night of September 22–23, appellant wakened her and told her that a man wanted to rent a room. She replied that 35 was the only vacant room she had and gave him a bunch of keys, one of which was for that room. The following day appellant informed her that he had rented the room to one Peterson, paid her the rental charge of $1, and returned to her the keys with the exception of the key for 35. On the witness stand appellant corroborated this testimony, but asserted by way of explanation that he did not occupy 35 and that he gave the key to Peterson, who had never returned it to him. It will therefore be seen that the fact that this key was found hidden in his bed in 29 was highly incriminating, and indeed it is not controverted by the government that if the reception in evidence of the key was erroneous, its admission was prejudicial. As has been stated, appellant was not present during the search proceedings, nor was he under arrest. The government, however, seeks to justify the search for and seizure of the key as an incident to the arrest of Al Nixon. But the officers had no warrant for his arrest and no substantial ground for believing that he was at the time engaged in the commission of any criminal offense. Even if we assume

that they might properly take into consideration Harrold's affidavit showing that he was present at the time his father sold the liquor to Harrold, the mere additional circumstance that he (Al Nixon) was in his father's room lying upon his bed, if sufficient to create a suspicion that he then knew of or had anything to do with the contents of room 35, certainly did not constitute probable cause for so believing.

Reversed.