**KELLEY v. UNITED STATES.**
No. 9470.

Circuit Court of Appeals, Eighth Circuit.
Oct. 31, 1932.

844

Herman Aye, of Omaha, Neb. (J. D. Cranny, of Omaha, Neb., on the brief), for appellant.

Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Edson Smith, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant was convicted on two counts of an indictment, one (count 3) charging him, in connection with Carl Hofeldt, with unlawfully and feloniously separating 1,313 gallons of alcoholic spirits from a fermented mash, they not being authorized distillers; the other (count 5) charging the unlawful possession of two stills designed for the manufacture of intoxicating liquor intended for use, in violation of the National Prohibition Act (27 USCA).

A number of assignments of error are urged raising the questions whether the court should have directed a verdict in favor of appellant Kelley on these two counts; the overruling of the motion to suppress certain evidence; the refusal to give certain instructions asked by appellant.

The most important propositions are: (1) Whether certain evidence introduced, consisting of parts of the still and liquors and paraphernalia found in the barn, was secured by an unlawful search and seizure;

and (2) whether appellant is in position to raise such question.

The facts are these: Two prohibition officers, Davis and Benson, had come upon the farm of Carl Hofeldt in Sarpy county, Neb., to make inquiries as to certain parties they were investigating. As they drove into the driveway there came to them a strong odor of mash, which was proceeding from a new barn on the premises, situated below the feed yard, south of the house and west of the house inclosure. They talked with Mrs. Hofeldt about it and told her there was a still down in that new building. She said there was, but that it was not theirs. As they approached this building they saw some one leave the west end thereof and disappear out of sight toward a creek. When they reached the building they found the northwest door wide open. They saw in the barn vats, a steam boiler, an alcohol still, and near the door ten-gallon kegs, an alcohol can or two, and all the paraphernalia ordinarily accompanying the manufacture of whisky. Benson went after the man who had run toward the creek, and Davis waited at the barn until he came back with him. He found this man (who was appellant) about one hundred feet from the barn near the creek, lying down in the grass. Benson asked him if he had anything to do with the distillery in the barn. He said he had been working there; that there was a cement block inside of the building and he went to pick it up and was going to heave it over the fence on the north side of the barn when he saw these men near the gate and he ran to the creek, and, if it had not been for a wire fence he would have crawled through to the tall weeds. He told the prohibition agents he did not know who was the owner of the still; that he did not own the building or the still; that he happened to be working there because he was broke; and that he walked into a cigar store in South Omaha and was offered a job at $50 a week and took it. The officers made no search and seized no property prior to the arrest of Kelley. When Kelley was brought back to the barn by Benson the still was running.

Assuming that the search and seizure were unreasonable under the Fourth Amendment, is appellant in any position to raise this question? There was no evidence to show that Kelley was the owner of the still and other property in the barn used in separating the alcoholic spirits from the mash, or of the barn, or a lessee thereof, or that he had any interest whatsoever in any of the property or any lawful possession of the same. Some effort was made to show that ten acres of Hofeldt's farm upon which the barn was located had been sold, but the effort was not successful. Kelley was under his own evidence a mere employee. True, he was engaged in the business of manufacturing liquor and may have had such custody of the illegal business as an employee would have in the absence of the owner or lessee, who seems in this case enshrouded in mystery by the fantastic tale of Kelley that he did not even know who his employer was. It is not understandable how Kelley was aggrieved by the seizure of some one else's property in which he had absolutely no interest. The most that can be claimed here is that Kelley as an employee had a certain physical custody and control of the illegal business and of the incriminatory evidence. That is not sufficient.

Counsel for appellant in the reply brief with commendable frankness concedes that Wida et al. v. United States, 52 F.(2d) 424, and Occinto v. United States, 54 F.(2d) 351 (decisions of this court), sustain the position of the government that Kelley cannot raise the question of an unreasonable search, but seeks to demonstrate that these cases were erroneously decided, and cites two cases as stating the correct rule. One is United States v. De Bousi (D. C. Mass.) 32 F.(2d) 902, 903. This is a case where there was no search warrant. The private dwelling of one Ferro was searched and a still was found. Defendant was on the premises and claimed to be the owner of the still and of the liquors. The court assumed that he "asserted a right to occupy the premises and dominion over, and ownership in, the seized property." It is to be noted, however, that the court says at page 903 of 32 F.(2d): "It has been held in this court that one who disclaims any interest in the premises searched and the property seized cannot take advantage of the illegality of the search and seizure." The other case, Alvau et al. v. United States (C. C. A. 9) 33 F.(2d) 467, is a case where one was domiciled in a residence as a guest or employee of its owner at the time of the alleged unlawful search and seizure of a still and liquor, and it was held that such party was entitled to claim the benefit of the motion to suppress. This was also a case of search of a dwelling. The court said at page 470 of 33 F.(2d): "Incidentally, it is said for the government that no error was committed, because in the application for suppression there was no express averment of ownership by the appellants of the still and liquor. But, as already stated, the court

did not pass upon the sufficiency of the application, and advised the parties that he would rule upon the facts as they were ultimately disclosed by the evidence, and undoubtedly the evidence established possession in defendants and ownership by Alvau. Besides, ownership of the building was directly alleged, and in essence the invasion of appellants' constitutional rights consisted of the forcible entry and the unwarranted search thereof." Their ownership was alleged which here was expressly denied by appellant.

Neither of these cases, it is apparent, is in point, nor in any way weakens the doctrine of Wida v. United States, supra, where this court said, page 426 of 52 F.(2d): "The evidence as to defendant Taylor makes his case somewhat different, but even weaker. He was a mere hired hand at this place, and he is not within the protection of either the Fourth Amendment or the above sections of the statutes, since Wida was the owner of the home and it is not contended that any search was made of anything belonging to Taylor." Or Occinto v. United States, supra, where this court said: "This motion was supported by the affidavit of one of the defendants, Fred Laluna. This affidavit set forth that this barn was the home and residence of Laluna and that it had been entered without a search warrant at the time the articles were found and taken therefrom. Laluna makes no claim to the ownership of the stills and other illicit articles sought to be recovered. In this situation he is in no position to complain of their being used as evidence, and this alone is enough to dispose of this matter. * * * As to appellant Occinto, who was merely a helper with no claim of living at the barn, there is no semblance of a basis to exclude this testimony."

Other cases in this court dealing with this question are Graham v. United States (C. C. A. 8) 15 F.(2d) 740, at page 742, where this court said: "If Graham was in a position to urge the objections made to this search warrant, we might be compelled to sustain them. They cannot, however, be availed of by this defendant. The buildings searched belonged to, and were under the control of, his father. The narcotics seized were not in young Graham's possession, and at no time has he made any claim thereto. * * * The guaranty of the Fourth Amendment to the Constitution against unreasonable search and seizure is a personal right or privilege, that can only be availed of by the owner or claimant of the property subjected to unreasonable search and seizure." And McMillan v. United States

(C. C. A. 8) 26 F.(2d) 58, where it was held that a defendant who disclaimed all dominion over place and property found could not raise the question of the validity of a search warrant.

The question seems well settled in this circuit that one who is not the owner, lessee, or lawful occupant of the premises searched cannot raise the question under the Fourth Amendment of unlawful search and seizure. To the same effect in other circuits: Armstrong v. United States (C. C. A. 9) 16 F. (2d) 62; Coon v. United States (C. C. A. 10) 36 F.(2d) 164; United States v. Messina (C. C. A. 2) 36 F.(2d) 699; Patterson v. United States (C. C. A. 9) 31 F.(2d) 737; Nixon v. United States (C. C. A. 9) 36 F. (2d) 316.

While Kelley claims in his evidence he was a mere employee, did not own the still or the building, and was merely working there for $50 per week, in his motion to suppress he assumes a position of greater dignity, and alleges he was in "possession and control" of a certain barn, etc., and speaks of certain personal property "which was in the custody and control of this petitioner," and again speaks of property "in the control and occupancy of your petitioner"; but nowhere does he allege any lawful occupancy, possession, or control, and as said by the court in United States v. Mandel et al. (D. C., Mass.) 17 F.(2d) 270, 273, "mere physical custody of incriminatory evidence is not enough to entitle one to invoke the protection of the amendment." And by the Supreme Court in Wilson v. United States, 221 U. S. 361, 380, 31 S. Ct. 538, 544, 55 L. Ed. 771, Ann. Cas. 1912D, 558: "But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held." Rather pertinent language is that in Holt v. United States (C. C. A. 6) 42 F.(2d) 103, 105, where the court denied the right of the defendant to raise the question of unlawful search and seizure and said: "One malefactor may not claim the right to escape by reason of the fact that the constitutional rights of another were violated." It appears to us that appellant has no foundation whatsoever on which to stand in his attempt to raise the question of unlawful search and seizure.

Assuming that he could raise this question, was there an unlawful search and seizure? The officers here did not rely entirely

on the sense of smell to locate the still. They heard the escaping steam of the boiler and heard the machinery in operation as they approached the building; they looked into the building through an open door and saw the still and liquor; they saw appellant flee from the building; one of them followed him and arrested him within one hundred feet of the barn. He made admissions as to working in the distillery. There was certainly sufficient evidence to warrant the officers in believing a statutory felony was being committed in their presence, and there was probable cause to believe that appellant had been and was at the time they saw him flee engaged in the commission of this felony.

■ The law governing arrest without warrant is completely established through the United States. If a crime is being committed in the presence of an officer, he may make an arrest without warrant, and when a party, is thus lawfully arrested the right exists to search the immediate place where the arrest is made and to seize the things connected with the crime. Garske v. United States (C. C. A. 8) 1 F.(2d) 620; Gerk v. United States (C. C. A. 8) 33 F.(2d) 485; Stark v. United States (C. C. A. 8) 44 F.(2d) 946; Wida v. United States (C. C. A. 8) 52 F.(2d) 424; Vecchio v. United States (C. C. A. 8) 53 F. (2d) 628; Felio v. United States (C. C. A. 8) 55 F.(2d) 161; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 5, 70 L. Ed. 145; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231.

■ It is contended there was no right to search the barn, it not being the place of arrest, and counsel relies on Agnello v. United States, supra, where the court speaks of the right without a search warrant contemporaneously to search persons lawfully arrested "while committing crime and to search the place where the arrest is made," etc., and counsel argues that the right does not extend to other than the immediate place of arrest. In the Agnello Case, Agnello's house, which was the subject of the search, was several blocks distant from the place where the arrest was made, and when it was entered the conspiracy had terminated and defendants were under arrest and custody elsewhere. Surely the place of search is not the mere spot upon which a defendant stands when he is arrested. It would seem rather an affront to common sense to say that were officers on the outside of a building where a murder was being committed, heard shots and screams from within, observed a person running from the door with a smoking revolver in his hands, and they pursued him and arrested him within a hundred feet of the building where the crime was committed and from which he had fled, that they could not search the building, but must be content with looking over the spot where the arrest actually took place.

The word "place" as used by the Supreme Court in the Agnello Case certainly should be given no such narrow meaning as counsel seeks to give it here. The barn was in the immediate vicinity of the place where the arrest was made.

■ The much-quoted case of Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 467, 76 L. Ed. 951, is not contra to the multitude of decisions upon this subject of unlawful search and seizure. There the search was made before the arrest with the hope of securing evidence, as the court points out, to indict and convict Taylor and to support some future arrest. The court does not discuss the rule in respect to searches incident to a lawful arrest, nor does it in any way limit the rule. It says, "the action of the agents had no immediate connection with an arrest." There is nothing of comfort in the Taylor Case for appellant here. There would be no use in further reviewing the cases on this subject. They cannot of course be entirely reconciled. The record is clear here that the officers had probable cause to believe that an offense of a felonious character was being committed in their presence and that defendant was the party committing it. The arrest was lawful and the search and seizure incidental thereto were not unlawful.

■ Another proposition urged is that certain instructions requested should have been given, one particularly with relation to defendant Kelley being a mere employee of some one else, and hence not legally guilty of possession of either of the stills referred to in the fifth count. The court in its instructions as to this said: "The possession that is there denounced by the Statute means an actual possession by the Defendant with intent to violate the law. It would be an excuse and a defense to that charge if it should appear that the person in possession had no real control of the still mentioned here. If he was merely there at somebody's beck and call to do some particular thing and did not have any function or responsibility of controlling and possessing the stills he would not be liable to the charge as it is made." We think the court covered the issues very fairly in its instructions.

The conviction on the fifth count does not seem to have been regarded very seriously by the court, as the punishment imposed was a $10 fine. This count refers to Kelley and Hofeldt having in their possession stills intended for use in violating the National Prohibition Act. Counsel suggest that the government is blowing hot and cold in urging that Kelley did not have sufficient interest in the property to invoke the Fourth Amendment, but did have sufficient possession to be guilty of an offense. We think there is nothing paradoxical about such situation. The difference in the two positions is the difference between a lawful and an unlawful possession. This property was contraband. Kelley may have had no interest in the property and yet be engaged in using it to violate the law. One could have sufficient custody and control as to warrant conviction of unlawful possession of the instrumentalities for the manufacture of intoxicating liquors and yet not have a sufficient interest therein to entitle him to raise the question of unlawful search and seizure. Very much in point is United States v. Crushiata (C. C. A. 2) 59 F.(2d) 1007. Defendants there were workmen without any interest in the premises or the property seized. The court held that their lack of interest in the property did not affect their situation as to the manufacture of intoxicating liquor with illicit stills, and that although they could not raise the question of unlawful search and seizure they could be convicted under the manufacturing count. That is the exact situation here.

As to the alleged insufficiency of the evidence adduced on the trial to justify sending the case to the jury, the testimony of Benson, heretofore referred to, fully answers the arguments made in this connection. Benson testified that at the time of the arrest, "I asked him if he had anything to do with the distillery in the barn"; that he said, "I have been working there." He also said after Benson took him back to the barn that he had been working there about six days for another man for $50 a week. Kelley's answer as thus testified to by Benson must be considered in the light of the question to which it was responsive; and thus considered it relates to the distillery and not to the barn. This negatives the suggested possibility that Kelley had been engaged in repairing the roof or the floor of the barn, or engaged otherwise than with reference to the distillery therein.

The circumstances under which appellant was apprehended make out at least a prima facie case of the "custody and control" declared in Patrilo et al. v. United States (C. C. A. 8) 7 F.(2d) 804, to be necessary to a conviction of unlawful possession. Appellant being the only one on the immediate premises, and having something to do with the illicit distillery placed upon him the burden of proving as a defense, in case he should choose to raise it, that he was there merely at the beck and call of some one else. This he has not done. In this respect the facts of the instant case are entirely different from those of the Patrilo Case where the owner and employer was upon the premises and in full charge at the time the unlawful violation was apprehended. If Kelley was not in actual control of the still, he was at least aiding and abetting others in the unlawful possession thereof and hence was a principal. Section 550, chap. 15, title 18, USCA. In Cardinal v. United States (C. C. A. 8) 50 F.(2d) 166, 168, this court had under consideration a similar question as the one we are considering as to count 5. It uses this language: "Throughout the submission of this case it was accepted and, in substance, stated that the defendants were not in actual physical possession and control of the still and distilling apparatus. The potential guilt of appellants was based upon the theory that they were aiders and abettors in the unlawful possession and control of others. The suggestion was made that this offense, demanding actual possession and control and duty to register, excludes the element of aiding and abetting as denounced by the statute. We do not think the application of the act is so limited."

We see no error in this record, and the judgment is affirmed.