UNITED STATES v. ONE 1937 MODEL STUDEBAKER SEDAN AUTOMOBILE, MOTOR NO. D 136774 (MORGAN, Intervener).

No. 1616.

Circuit Court of Appeals, Tenth Circuit.

April 6, 1938.

Richard P. Shanahan, Sp. Asst., U. S. Department of Justice, of Washington, D. C. (William C. Lewis, U. S. Atty., and Wade H. Loofbourrow, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for the United States.

John W. Tyree, of Lawton, Okl., for appellees.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The appellant (United States of America) instituted this proceeding under section 3450 of the Revised Statutes, 26 U.S.C.A. § 1441, for forfeiture of an appropriately described Studebaker automobile which had been seized by federal agents on the ground that it contained and concealed intoxicating liquor upon which the tax had not been paid, it being averred in the information that one George H. Morgan claimed some right, title, and interest in such automobile. After being permitted to intervene, said Morgan filed a motion to suppress all of the evidence taken and acquired in the course of the search and seizure of the automobile on the ground that the search and seizure were unlawful and illegal, in that same was made without a search warrant and in violation of his rights under the Fourth Amendment to the Constitution of the United States. A jury having been waived, the cause was tried by the court. The facts relative to the search and seizure were partly stipulated.

Soon after a federal investigator, named Harris, arrived in Lawton, Oklahoma, on December 1, 1936, he in person received reliable information verbally and by telephone that said intervener and his son, Herman Morgan, and his son-in-law Lee Roy Walker, were engaged in or carrying on an active illicit business in said city in both taxpaid and nontaxpaid intoxicating liquors. Further investigation by him disclosed that each of said parties had been convicted of violation of the liquor laws of the United States and that said Herman Morgan and said Walker were each holders of current Retail Liquor Dealer's Special Tax Stamps, and were illicitly handling such taxpaid as well as nontaxpaid liquor. Further investigation followed.

On January 13, 1937, said Harris observed Walker deliver to a known and notorious bootlegger a paper carton which resembled a whiskey carton. Two days later said Harris again saw said Walker deliver a paper sack which he thought contained two half-gallon jars of whisky and following this delivery he saw Walker drive to the residence of intervener. Said Harris received further evidence about that time to the effect that Walker was selling nontaxpaid liquor from his residence and thereafter undertook to watch said Walker's premises. While engaged in that task on February 4, 1937, the said officer, Harris, accompanied by his wife, observed a green Buick automobile back out from the said Walker's residence at about 3:15 in the afternoon and start northward, it being the same automobile that Walker had used in making the two prior deliveries.

Said Harris followed said green Buick automobile, which was driven over the streets and along a driveway to a point near a garage of intervener's, located 35 feet from his residence, where the said green Buick car was then located in the driveway five feet from said garage, when said officer and his wife saw the intervener sitting under the steering wheel of a Studebaker car located in said driveway five feet from said garage, the said Walker then and there standing between the two cars about three feet apart in said driveway. The said officer having followed said Buick car and driving in on said driveway behind said car and the Studebaker car, announced his identity as being an Alcoholic Tax Unit United States officer, and inquired of Walker whether he had any liquor in his car, who replied in the negative, at which time, the officer seeing intervener remove a paper sack from the seat in the Studebaker car beside him and place it on the floor of said car near his feet, then and there heard glass clink in said sack. Thereupon the officer opened the door of the said Studebaker car, took hold of the sack, and found that it contained two half-gallon jars of nontaxpaid whisky, whereupon he asked intervener where he obtained the whisky, who replied from a man that he did not know and that he got it for his son, Her-

man Morgan. Following this, the said investigator's wife called the Sheriff. Another United States Alcoholic Tax Unit investigator, E. T. Smith, shortly thereafter arrived upon the scene.

The intervener, George H. Morgan, was then arrested and charged with possession of whisky, the car being seized and the libel action instituted.

The evidence further disclosed that after the seizure of the whiskey in said car, said officers going to the premises of Lee Roy Walker there found that he was the holder of a Retail Liquor Dealer's Special Tax Stamp, and seized a quantity of moonshine whisky, Walker being arrested and charged in a separate case. Said officer Smith testified that the said Herman Morgan and said Walker were known bootleggers with prior convictions therefor in the federal court.

No search warrant was had by the said officer, Harris, for said premises or Studebaker car, and no warrant had been issued for the arrest of George H. Morgan or said Walker, the arrest of George H. Morgan being made after the seizure of the whisky in the car. The first time that Harris saw the package in Morgan's car was when he heard the clinking of the glass as he saw Morgan moving the package from the seat of the car to its floor.

In this investigation Harris was in the discharge of his duty as such federal officer in that city and had been since about December 1, 1936, during which period said officer having made investigation as to the two Morgans and the said Walker, which disclosed the facts to Harris as herein set out.

Said Harris with his wife in his car coasted along behind said green Buick car with the evident expectation of finding whiskey therein. His identifying himself as such officer, and interrogating Walker as to whether he had liquor in said car so discloses. The movement of intervener at that time as to removal of the package from the seat of his car to its floor and the clinking of the glass attracting Harris' attention obviously diverted him from further attention then as to Walker and the green Buick car. With the facts and information before him he was justified in reaching the conclusion that Walker had probably delivered the paper package to intervener. Harris in thus coasting behind said green Buick car down said driveway, Walker would not have been permitted to complain as to a search of same as the evidence discloses that he had

no interest in intervener's premises. Occinto v. U. S., 8th Cir., 54 F.2d 351; Kelley v. U. S., 8th Cir., 61 F.2d 843, 845, 86 A.L.R. 338, 346; Wida v. U. S., 8th Cir., 52 F.2d 424; Nelson v. U. S., 8th Cir., 18 F.2d 522; U. S. v. Messina, 2d Cir., 36 F.2d 699; Whitcombe v. U. S., 3rd Cir., 90 F.2d 290; Chepo v. U. S., 3rd Cir., 46 F.2d 70; U. S. v. Crushiata, 2d Cir., 59 F.2d 1007; In re Dooley, 2d Cir., 48 F.2d 121.

In Wida v. U. S., supra, in paragraph 1 of the syllabus, it is said: "Officers receiving information accused had still at his home held authorized to go there to investigate without search warrant (27 USCA, § 39; 18 USCA, § 53)." In the opinion, it is said: "The validity of this arrest is beyond successful challenge. Before going to this place, the officers had received information and complaints that Wida had a still in operation at his home and they went about one hundred and twenty miles to investigate the accuracy of this information. They had a right to go to the house for this purpose, and when they arrived there, and before entering the house, they received unmistakable evidence * * * that their information was correct." Further in the opinion, at the top of page 426, of 52 F.2d, it is said: "We hold: (1) That where officers have reasonable information that a felony is being committed at a certain place they are justified in making a proper investigation at that place to ascertain whether such information is correct."

This evidence on motion was suppressed by the trial court as being illegally obtained, from which action of the court the government prosecutes this appeal.

There is a well-recognized difference in the application of the constitutional provision between the search of a dwelling, store, or other structure, and that of a boat, wagon, or automobile, of necessity arising out of a dissimilarity of conditions. A warrant may be readily obtained for search of a dwelling, store, or other structure, where the information is at hand before the structure is visited, there being little excuse or justification for a search without it, but emergencies justifying a search of a structure may arise so as to render the search without a search warrant excusable or justifiable. However, as to the search of a boat, wagon, or automobile in time to accomplish a lawful result, it may be impracticable or impossible to secure a writ to practically meet an emergency. While the writ is being obtained the boat, or wagon, or automo-

bile, may be rushed out of the locality and even beyond the jurisdiction of the process, or the contraband secreted or destroyed so as to defeat the purposes of the law. Carroll v. U. S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.

The indiscriminate stopping and searching of automobiles on the highways on the mere chance of finding contraband liquor is within the prohibition of the Fourth Amendment. However, an automobile may be searched without a search warrant upon probable cause. In order to warrant a valid search the officer must have such information as to cause a reasonable, discreet, and prudent person to believe in good faith that the automobile is being used for the purpose of concealment or transportation of contraband liquor. Carroll v. U. S., supra; Husty v. U. S., 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407; Hester v. U. S., 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Eierman v. U. S., 10th Cir., 46 F.2d 46; Underhill v. U. S., 10th Cir., 47 F.2d 891; Moore v. U. S., 10th Cir., 56 F. 2d 794; Mulrooney v. U. S., 4th Cir., 46 F. 2d 995; Fisher v. U. S., 4th Cir., 46 F.2d 994; Milam v. U. S., 4th Cir., 296 F. 629; Van Eeckhoute v. U. S., 8th Cir., 79 F.2d 827; Kaiser v. U. S., 8th Cir., 60 F.2d 410; McInes v. U. S., 9th Cir., 62 F.2d 180; Rodriguez v. U. S., 5th Cir., 80 F.2d 646; Whitcomb v. U. S., supra; and Kopp v. U. S., 7th Cir., 55 F.2d 878.

Intervener lays stress upon the point that search was made within his curtilage. The Studebaker was located in the driveway five feet from the said garage and 35 feet from the dwelling. The officer had the right under the circumstances to go to the point where these cars were located for the purpose of investigating. Being there for a rightful purpose, facts and circumstances coming to his attention while in the performance and lawful discharge of his duty, in connection with his previously acquired information, the search of the car belonging to the intervener was justifiable.

In intervener's (appellee) brief it is asserted that after the hearing of the clinking of the glass and seeing the package removed by intervener from the car seat and placed upon its floor, officer Harris could have sent his wife to call Smith, for him to procure a search warrant, Harris to leave the premises but to remain in view of both Walker and intervener, Morgan, and that if inter-

vener left the premises in the Studebaker automobile then Harris might have been justified in searching said Studebaker automobile. The record is that the "officer then opened the door of the Morgan car, took out the paper sack and found that it contained two half-gallon jars of nontaxpaid whiskey. He asked Morgan where he obtained it and Morgan said from a man he did not know, that he was getting it for Herman Morgan. Following this, the officer's wife called the Sheriff, and another Federal officer, E. T. Smith, shortly joined the officer Harris."

There is nothing in the record to the effect that Harris sent his wife to call Smith or that he knew where Smith was, or that the sheriff was contacted over the phone by his wife, or that the sheriff responded at any time on that occasion whilst the officer Harris was there, or why Smith appeared upon the scene, and the further statement in appellees' brief is that by Harris leaving the premises but remaining in view of both Walker and the intervener, if intervener had left the premises in the Studebaker automobile then Harris might have been justified in searching said Studebaker automobile, is tantamount to an admission that his motion to suppress the evidence is without merit.

The Studebaker car in which intervener was sitting on the seat on which by his side was the paper sack in which the glass clinked, said jars containing two half-gallons of nontaxpaid whisky, was 35 feet from his residence or house and if Harris withdrew from the driveway by which he had followed the green Buick car which Walker was driving, with the evident purpose of discovering him in the delivery of nontaxpaid whiskey, what was to prevent said intervener, Morgan, from taking said paper sack in which the whisky was contained and going into his house, 35 feet away, where he had a right to go and making away with the whisky, as he was attempting to do when Harris, in following the green Buick car as he had a right to do, happened upon him, or to drive in the Studebaker down the driveway to the street and out into the city? To have forcibly kept him (Morgan) there would have been in effect taking him in custody. Intervener's theory that he should have withdrawn and then if intervener had attempted to leave in the Studebaker that then Harris would have been justified in searching him, would have then meant to forcibly stop the car.

The judgment of the lower court is reversed, and the case remanded with directions to overrule motion to suppress and to proceed with a new trial.