Charlie **RHODES**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15347.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Ray Sandstrom, Joseph A. Varon, Varon & McMorrough, Hollywood, Fla., for appellant.

Anthony S. Battaglia, E. David Rosen, Asst. U. S. Attys., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Having been convicted on five counts of violating provisions of the Internal Revenue Code relating to alcoholic liquors, appellant contends his conviction should be reversed because certain evidence admitted was obtained by an unlawful search and seizure, because the court admitted certain statements of appellant without first requiring the Government to prove that they were voluntary, and because of defects in the indictment, the proof, and the instructions to the jury.

The indictment charged appellant Rhodes and a codefendant, James Miller, with (1) possession of 5⁵⁄₁₆ gallons of distilled spirits which did not bear revenue stamps, in violation of 26 U.S.C.A. § 2803(a); (2) possessing an unregistered distilling apparatus, in violation of 26 U.S.C.A. § 2810; (3) carrying on the business of a distiller without giving bond, in violation of 26 U.S.C.A. § 2833; (4) making and fermenting 500 gallons of mash fit for distillation of alcoholic spirits other than in a bonded distillery, in violation of 26 U.S.C.A. § 2834; and (5) possessing untax-paid liquor and property intended for use in violating the Internal Revenue laws, in violation of 26 U.S.C.A. § 3116.

The case was tried to a jury. Motions for acquittal were denied at the close of the Government's evidence and the defendants' evidence. Appellant was convicted on all counts and sentenced to two years' imprisonment on each of the first four counts and 30 days on the fifth count, all sentences to run concurrently.

The Government's case consisted of the testimony of three Alcohol Tax Unit officers and a Florida State Beverage Department officer. Their testimony showed that appellant Rhodes had been seen placing an empty five-gallon jug and a one-gallon jug into his Buick automobile at one Jesse Townsend's residence in Fort Lauderdale, on July 19, 1954. On July 26, 1954, officer Thompson saw Rhodes and James Miller get into the Buick and drive west from Fort Lauderdale and into a wooded area. There they parked the Buick by a shed, and walked through the woods and into a field grown up in weeds six or seven feet high. Some minutes later Rhodes came back to the car and took two paper sacks of charcoal out of the trunk and returned to the field. One of the two officers observing from a tree the appellant's actions notified other officers in a radio car while the other climbed down, looked over the Buick, finding charcoal spilled on the rear bumper, and then followed Rhodes' path into the field. In the middle of the field, about 100 yards from the Buick, he saw a distillery set up in a clearing. Rhodes was standing beside a 50-gallon drum stirring the contents with a shovel, as Miller poured in a bucket of water. This officer immediately placed the men under arrest and shouted for the other officers. Beside the still, the officers found thirteen 50-gallon drums used as fermenters, and eleven of these were filled with mash which was in a state of fermentation. There were also five bags of charcoal for use as fuel, but the officers found no alcoholic spirits there and the still was not then in operation. Immediately after the men had been arrested and the still destroyed, the officers took the car keys from appellant's pocket and searched the Buick, finding a half-pint bottle of untax-paid moonshine whiskey. The officers informed the two men that they were privileged to remain silent, that any statement they made might be used against them, and that there would be no immunity or reward for any statement they did make. Appellant admitted ownership of the still and said Miller was working for him, and mentioned that they had put mangoes in the mash to make it taste better. Other statements were made also, but the record is unclear

whether Rhodes or Miller made them. The officers then drove to appellant's house and Rhodes told them that hidden in a field adjacent to the house there was a five-gallon jug of whiskey, which the officers thereupon found. This container likewise bore no revenue stamps.

The defense offered no evidence except for Miller's testimony, which tended to exculpate Miller as an innocent bystander, but had no bearing on the question of appellant's guilt.

Appellant first contends that the evidence concerning the half pint found in his car should not have been admitted because it was obtained by an unlawful search and seizure. The court below held that the evidence was admissible because it was obtained by a search incident to a valid arrest, and we agree. In the case principally relied on by appellant, Agnello v. United States, 269 U.S. 20, 30, 46 S. Ct. 4, 5, 70 L.Ed. 145, 51 A.L.R. 409, the Supreme Court said:

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."

There being no question here as to the validity of the arrest, the only controverted matter is whether the search was of "the place where the arrest was made." Appellant's sole argument is that it was of a different place simply because the Buick was some 100 yards away from the exact spot where the arrest was made.

In United States v. Rabinowitz, 339 U. S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653, the Court said:

> "What is a reasonable search is not to be determined by any fixed formula. * * * The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. * * * Reasonableness is in the first instance for the District Court to determine."

There it was held that where a defendant was arrested in his one-room office, a search without a warrant of his desk, safe, and filing cabinets for an hour and a half was not unreasonable. It is clear that the majority of the Court thought that no fixed radius limits the "place of the arrest" which is subject to search. On the other hand, Mr. Justice Frankfurter's dissenting opinion in the Rabinowitz case took the position that the area of lawful search should extend only to the person of the one arrested and his immediate physical surroundings; that is, it should extend only so far as is necessary to protect the arresting officer and to deprive the prisoner of potential means of escape, and to avoid destruction of evidence by the arrested person. The rule advocated in this dissenting opinion undoubtedly provides a workable criterion, and defines the area of permissible search more clearly than that of the majority opinion; appellant would evidently have us adopt that criterion here. However, the majority of the Supreme Court has rejected that test and adopted the rule that the area which can be searched is that which is reasonable under the circumstances, and therefore we may not adopt the former.

The Courts of Appeals have generally held that the area of lawful search incident to a valid arrest extends to some considerable radius, at least if the search of a dwelling is not involved. In several such cases it has been said that the constitutional protection against unreasonable searches of "persons, houses, papers, and effects" does not apply to open fields or enclosed grounds or even to a garage detached from a dwelling; e. g., Martin v. United States, 5 Cir., 155 F.2d 563; Carney v. United States, 9 Cir., 163 F.2d 784, certiorari denied 332 U.S. 824, 68 S. Ct. 165, 92 L.Ed. 400.

In Kelley v. United States, 8 Cir., 61 F.2d 843, 86 A.L.R. 338, it was held that when a person was arrested 100 feet from

a barn whence he had fled when officers approached, a search of the barn was proper and incidental to the arrest. The court said, 61 F.2d 843, 847:

"It is contended that there was no right to search the barn, it not being the place of arrest, and counsel relies on Agnello v. United States, supra, * * * and * * * argues that the right does not extend to other than the immediate place of arrest. In the Agnello Case, Agnello's house, which was the subject of the search, was several blocks distant from the place where the arrest was made * * *. Surely the place of search is not the mere spot upon which a defendant stands when he is arrested. * * *

"The word 'place' as used by the Supreme Court in the Agnello Case certainly should be given no such narrow meaning as counsel seeks to give it here. The barn was in the immediate vicinity of the place where the arrest was made."

See also Dibello v. United States, 8 Cir., 19 F.2d 749. In that case the officers arrested Dibello in his saloon on the ground floor, found a key to the basement on the bar, and searched the basement without a warrant. It was held that the search of the basement was reasonable and the evidence found was admissible. See also United States v. Lerner, D.C.D.Md., 35 F.Supp. 271.

■ We think that under the circumstances of the present case, the search of the automobile was not unreasonable. Though 100 yards distant from the exact spot of the arrest, it was in the immediate vicinity, parked close enough to be conveniently used for transporting raw materials to the still and the finished product away. The defendants had come in the car and Rhodes had walked back for the charcoal. The car was connected intimately enough with the work which was being performed at the still, that the acts of the defendants, the arrests, and the search, were all part of one transaction; in other words, the proximity of these matters in time and the observed connection between the acts of defendants at the car and at the still site, made the search reasonable, and the fact that the car was situated somewhat farther away than in the reported cases is not a significant distinction.

Of the cases relied upon by appellant, the Agnello case, supra, is sufficiently distinguished in the quotation from the Kelley case, supra. We think the fact that a dwelling was searched there is particularly significant. In Papani v. United States, 9 Cir., 84 F.2d 160, it was held that the search of a dwelling house in Millbrae, San Mateo County, California, was not reasonable and was not incident to an arrest in San Francisco. The officers had observed the man arrested drive from the house in question in a loaded car and followed him to San Francisco before making the arrest. In the present case, there was a very considerably smaller interval of time and space between the arrest and the search, and no dwelling was involved. The other cases cited by appellant in support of his argument that the search here was unreasonable, are even less in point.

We conclude that under the rule of the Rabinowitz case, supra, the search was not unlawful and the evidence was properly admitted.[1]

---

1. Another ground on which we might have based our result herein is that appellant waived his right to object to the introduction of evidence obtained by the search and seizure, by his failure to raise the issue before trial by motion to suppress the evidence.

"[The] principle is that, except where there has been no opportunity to present the matter in advance of trial, Gouled v. United States, 255 U.S. 298, 305, 41 S.Ct. 261, 65 L.Ed. 647; Amos v. United States, 255 U.S. 313, 316, 41 S.Ct. 266, 65 L.Ed. 654; Agnello v. United States, 269 U.S. 20, 34, 46 S.Ct. 4, 70 L.Ed. 145, a court, when engaged in trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property, which are material and properly offered in evidence, because the court will not in trying a

■ The appellant also contends that the court erred in admitting into evidence testimony that appellant made certain incriminating statements to the arresting officers, without sufficient proof that the statements were voluntary. The question was not raised at the trial, for appellant objected only that no predicate had been laid for the admission of these statements, not that they were involuntary. Therefore, it seems that we are asked to consider the question for the first time. However, assuming that the objection below was sufficiently specific, we think that neither the facts nor the law on this point are in the appellant's favor. There was sufficient evidence to show the statements were voluntary, and even if this were not so, in the Federal courts there is no presumption against the voluntary character of a confession, and the burden is not on the Government in the first instance to show its voluntary character. Hartzell v. United States, 8 Cir., 72 F.2d 569, 577; Ah Fook Chang v. United States, 9 Cir., 91 F.2d 805.

Appellant contends that the court erred in instructing the jury as follows:

"Your judgment of the facts should be your own uninfluenced judgment, uninfluenced by the Court except that you are bound to follow the law of the case as the Court gives it to you, and you are not to follow my comments or inferences that may arise therefrom; and you are to be uninfluenced by my comments or anything that counsel has said in their arguments. That's not testimony or evidence before you."

■ Appellant argues that these instructions were erroneous and prejudicial, and deprived him of the effective assistance of counsel. However, no objection was made to the instructions in the court below, and we are not to consider an objection to the instructions now raised for the first time. Federal Rules of Criminal Procedure, Rule 30. As to the propriety of an instruction of this kind, see Johnson v. United States, 8 Cir., 126 F.2d 242, 250.

■ Finally, appellant contends that count 2 of the indictment was defective in that it failed to allege that the distilling apparatus was for the distillation of alcoholic spirits; that with respect to count 3, the proof failed to show that appellant ever distilled any spirits; and that with respect to count 4, the proof was defective because there was no testimony that the mash was fit for distillation. We need not consider these contentions, because irrespective of their correctness, the judgment of conviction and sentence of two years' imprisonment on count 1 would stand unaffected. We shall for the sake of brevity pass over these claimed errors, without expressing any opinion that they might be meritorious, or indeed that they are any more than trivial objections.

There being no prejudicial error, the judgment is

Affirmed.

criminal case permit a collateral issue to be raised as to the source of competent evidence." Segurola v. United States, 275 U.S. 106, 111–112, 48 S.Ct. 77, 79, 72 L.Ed. 186.

This quotation is dictum, but many court of appeals cases have held that failure to raise the issue by motion to suppress before trial, when the defendant knows the property has been seized, constitutes a waiver. United States v. Salli, 2 Cir., 115 F.2d 292; Moore v. Aderhold, 10 Cir., 108 F.2d 729; Patterson v. United States, 9 Cir., 31 F.2d 737, 738; Rossini v. United States, 8 Cir., 6 F.2d 350, 352–353; United States v. Sferas, 7 Cir., 210 F.2d 69, 74, certiorari denied Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086; and cases cited in all of these. However, we do not base our decision on this ground, for the reasons that we have not been briefed nor heard oral argument on the point, that so far as we are aware there are no decisions of the Supreme Court or of this circuit establishing this principle, that we are not sure that the inconvenience to the trial court of having to decide a collateral issue in a criminal trial would justify this technical reason to refuse to consider a question of the deprivation of a constitutional right, and finally that the matter is apparently left to the trial court's discretion by Federal Rules of Criminal Procedure, Rule 41(e), 18 U.S.C.A.