**Hazel Newby CREASY, Petitioner,**

v.

**Evelyn LEAKE, Superintendent, Virginia Industrial Farm for Women, Respondent.**

**Civ. A. No. 68–C–68–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 18, 1968.

---

16.  Vizcarra-Delgadillo  v.  United  States,  395 F.2d 70 (9th Cir. 1968).

**196**

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed by Hazel Newby Creasy, pursuant to the provisions of 28 U.S.C.A. § 2241.

Petitioner is presently confined in the Virginia Industrial Farm for Women in Goochland County, Virginia, serving a twenty year sentence for murder in the first degree imposed by the Circuit Court of Montgomery County, Virginia, on February 26, 1966.

Petitioner has exhausted her state remedies in conformity with 28 U.S.C.A. § 2254 and is properly before the court.

Petitioner alleges the following two complaints as violations of her constitutional rights:

(1) Incompetent evidence obtained by illegal search and seizure was presented at petitioner's trial for murder.

(2) Petitioner was denied a fair trial.

Petitioner was convicted of shooting and killing her husband, Floyd Creasy, with a .22 calibre pistol. The alleged shooting and murder occurred on March 29, 1965, in Montgomery County, Virginia, at premises owned by Floyd Creasy. Floyd Creasy owned a restaurant on these premises and lived in an apartment located behind the restaurant in the same building therewith. About sixty to ninety feet west of the restaurant and apartment was another building in which petitioner was living at the time of the murder with her two sons by a former marriage. This apartment occupied by petitioner and her two sons, Roger and Roy Newby, hereinafter referred to as the Newby apartment, was also owned by Floyd Creasy and formed a complex with the restaurant building.

At approximately 8:00 p. m. on the evening of the shooting, there were only three persons in the restaurant— Floyd Creasy, Gail Sutphin, who worked as a waitress, and one customer, Earnest Quesenberry. Shortly after Creasy walked from the restaurant into his rear living quarters, the waitress and the customer heard some gunshots and then heard the sound of glass breaking. The waitress testified that she remembered hearing one shot, and the customer testified that he heard two or three shots. The waitress and the customer immediately thereafter ran out of the restaurant and went to another restaurant approximately two or three hundred feet away, where the waitress called the Sheriff's office. The customer testified that he

heard several more shots between the time he left Creasy's restaurant and the arrival of Deputy Sheriff Alfred Smith who had been sent to investigate the waitress' call.

When Deputy Sheriff Smith arrived he parked in front of the restaurant. As he walked from his car to Creasy's restaurant, he heard a moan and saw Floyd Creasy outside of the building, kneeling on his right knee, apparently wounded in his side. As Smith approached the wounded Creasy in response to his call, "Please help me", petitioner came around the rear of the restaurant from the Newby apartment and began firing at Floyd Creasy. Smith yelled at petitioner to throw down her gun and then he dived behind a door, while Floyd Creasy got on his feet and ran around in front of the building, but petitioner continued to fire her gun, chasing after her husband.

Both petitioner and her husband were taken to the hospital, petitioner having a self-inflicted gunshot wound. Her husband died shortly after arriving at the hospital.

Deputy Sheriff Smith took possession of the murder weapon, a .22 calibre nine-shot revolver, and found that all nine bullets had been fired. Smith then investigated the premises including the restaurant, Floyd Creasy's living quarters behind, and the Newby apartment. He found several bullet holes in the living quarters behind the restaurant. Deputy Sheriff Smith continued his investigation into the Newby apartment. No one was at home but the door was ajar and the screen door unlocked. Deputy Sheriff Smith entered the room and found nine empty .22 calibre cartridges on the floor and an empty gun box on the bed. A photograph was taken of the empty cartridges and gun box and introduced at the trial of petitioner as Commonwealth's Exhibit Number 16. The background of this photograph included a partially empty whiskey bottle which Deputy Sheriff Smith seized along with the cartridges and empty gun box. The search of the Newby apartment, the seizure of the articles, and the photo-

graphing of the nine cartridges occurred before petitioner was arrested or a search warrant was issued.

Petitioner's first complaint is that the photograph and the nine cartridges were acquired as a result of an illegal search and seizure. The Fourth Amendment to the United States Constitution guarantees every citizen the freedom from an illegal search and seizure. The Due Process clause of the Fourteenth Amendment has been interpreted by the United States Supreme Court to generally preclude the admission of evidence obtained by an illegal search and seizure in a state court trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961). Two questions must be answered: 1. whether the search and seizure in the Newby apartment was illegal and, if so, 2. whether the admission of the photograph and the nine cartridges as evidence at the trial denied petitioner her constitutional right to due process.

The search was made without a search warrant, but that fact alone does not render the search illegal; the constitution guarantees only the right to be free from an unreasonable search and seizure. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). What is a reasonable search cannot be determined by any set formula, but must be determined by the facts and circumstances in each case. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). A search incident to an arrest is generally reasonable without a search warrant. United States v. Rabinowitz, supra. Petitioner points out that she was not arrested at the time of the search and seizure. However, the law does not require that the arrest be made prior to the search. Martin v. United States, 183 F.2d 436 (4th Cir. 1950); Annot., 89 A.L.R.2d 715 at pp. 746 to 757 (1963); Later Case Service, 6 A.L.R.2d 753 (1966). The officer must have probable cause to make the arrest, however, and the search cannot be the means of acquiring such probable cause. There can be no question that Deputy

Sheriff Smith had probable cause to arrest petitioner; she committed the felony while he was watching. But petitioner was wounded and was immediately taken to the hospital by an ambulance where she remained for several days. Under these circumstances it was impossible to arrest petitioner on the spot. Under the particular facts and circumstances of this case, the court finds that there was probable cause to arrest the petitioner, although her wounded condition prevented any such action at the time and that a search and seizure without a warrant was reasonable in this case even though made before the arrest.

██ Petitioner then complains that even if the officers were justified in making a search, they were not justified to extend the search to the Newby apartment. The reasonable extent of a legal search without a warrant also depends on the facts and circumstances in each individual case. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Annot., 74 A.L.R. 1387 at p. 1395 (1931). In Kelley v. United States, 61 F.2d 843 (8th Cir. 1932) the court held that a search without a warrant was legal when it extended to the building from which the defendant fled before his arrest.

The court finds that the search of the Newby apartment was reasonable. Deputy Sheriff Smith could see that the victim was wounded when he arrived. He then saw petitioner come from the direction of the Newby apartment and begin shooting at the victim again. Smith could not know where the victim had been first shot; he didn't know the full range of the activities before he arrived. He had reasonable cause to investigate all the premises to preserve any implements of the crime. The Creasy living quarters and the Newby apartment were in the same complex and both were occupied by the parties to the shooting. Petitioner's counsel does not object to the search of the restaurant building. The court fails to see the great distinction between the restaurant building and the Newby apartment in view of the fact that the

shooting observed by Smith occurred outside of either building. From his interrogation of the witness, his investigation of the number of bullet holes in the restaurant and his own partial view of the crime, it was obvious to Smith that more than nine shots had been fired. Either there was another weapon, or there were more empty cartridges. The officers had the right and duty to investigate the scene of the crime properly to determine the facts, and seize any implements used to perpetrate the felony.

██ Furthermore, petitioner was not a tenant or owner of the Newby apartment, but only a guest there. She cannot object to the entry of officers into a room not possessed by her. The articles were lying out in full view, and the officers did not search through any of petitioner's possessions to find the articles photographed.

The learned trial judge in the State Court denied petitioner a writ of habeas corpus on the same grounds as set forth above, i. e. that the search and seizure were reasonable. Having decided this point, the trial judge properly felt that it was unnecessary to continue the discussion. But this court as a matter of preference will discuss an additional ground for its decision.

██ Petitioner contends that evidence acquired by means of an illegal search and seizure was introduced at his trial for murder. Even if this contention were true, it does not necessarily follow that petitioner's trial was without due process of law. The challenged evidence must also have contributed to the conviction. United States Ex. rel. Smith v. Nelson, 275 F.Supp. 261 (N.D. Cal.1967). The admission of unconstitutionally obtained evidence is presumably harmful but may be harmless error if the jury's "judgment was not substantially swayed by the error * * *" Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect; the verdict and

the judgment should stand, * * *." Kotteakos, supra, 328 U.S. at 764, 66 S.Ct. at 1248. The evidence challenged as unconstitutional is the photograph, the nine empty cartridges, and the empty gun box. The court is convinced that the introduction of this evidence "did not influence the jury, or had but very slight effect, * * *" Any purpose for which the photograph or cartridges may have been offered was satisfactorily achieved by the testimony of petitioner herself as well as that of other witnesses. Therefore, the photograph and cartridges were useless evidence.

The purpose of introducing the cartridges and the photograph was outlined by the prosecution in argument made in the absence of the jury on the motion of petitioner by counsel to exclude such evidence. There were several bullet holes found by Deputy Sheriff Smith in the restaurant building, and these holes added to the number of shots fired outside the building by petitioner in Smith's presence proved that more than nine shots (the capacity of the murder weapon) had been fired. The testimony of the customer supported this conclusion. Therefore the prosecution was afraid that petitioner would allege that her husband had fired at her, and she had returned fire in self defense. To rebut this possible allegation, the prosecution offered the nine cartridges and the photograph of the nine empty cartridges in the Newby apartment to account for all the shells as being fired from petitioner's gun, thereby disproving the possible allegation of self defense after the husband fired first. The photograph was intended to prove that petitioner had gone back to the Newby apartment, reloaded her gun and then returned to the restaurant, thus proving that the husband never fired any gun. But petitioner never alleged that her husband fired any shots; her testimony was to the effect that she fired all the shots. Petitioner also admitted that she went back to the Newby apartment between her first and last shot. Her testimony admitted the presence of empty cartridges in the Newby apartment, but she explained this by saying that she fired nine shots out of her back window for practice on the afternoon of March 29, 1965. Thus, petitioner's own testimony included the facts which the jury could have interpreted from the photograph and the nine empty cartridges.

The prosecution's contention that petitioner fired more than nine times and therefore must have reloaded is conclusively proven by other evidence in the trial. Deputy Sheriff Smith's testimony in reference to the number of bullet holes found in the restaurant building read in conjunction with his testimony as to the number of shots he heard fired on the outside after his arrival, prove that more than nine shots were fired. The customer also testified that he heard more than nine shots. Then petitioner testified in effect that she fired all the shots. Thus, the jury must have been convinced beyond a doubt that petitioner reloaded. The photograph was introduced to rebut an anticipated allegation that petitioner never made, and any facts that the jury could have concluded from the cartridges and the photograph were more than adequately proved by other competent evidence at the trial.

Petitioner enumerates three incidents at the trial in support of her second contention that she was denied a fair trial— In the opening statement the prosecution stated that, "Mrs. Creasy thereafter went by the ABC Store" without offering any subsequent proof of this allegation; that the whiskey bottle shown in the background of the photograph taken in Newby's apartment was displayed on the prosecution's table throughout the trial in full view of the jury but was never introduced in evidence; and that the prosecution introduced the testimony of Sheriff Grady McConnell to prove petitioner's "bad" reputation when he did not know the reputation of her character traits which were relevant at the trial.

The prejudicial effect of Sheriff McConnell's character testimony was corrected by the trial judge's instruction

to the jury to disregard such testimony. The transcript of the trial at p. 256 indicated that even petitioner's counsel, Mr. Goldsmith, was satisfied with the court's instruction at that time:

THE COURT: Well, I'll instruct the jury at this time to disregard any evidence from the sheriff about Mrs. Creasy's reputation one way or the other. * * *

MR. GOLDSMITH: All right, sir. That's fine.

THE COURT: Does that straighten you out?

MR. GOLDSMITH: That's what I was going to ask the court to do.

THE COURT: All right, sir. Disregard it, and strike it from the record.

The second mentioned incident was the remark by the prosecution in the opening statement about petitioner's trip to the "ABC Store" which was never later supported by evidence. The opening statement is not evidence and the jury was so informed. See Lotz v. Sacks, 292 F.2d 657 (6th Cir. 1961). Remarks are often made in opening statements and later evidence fails to support them, often through inadvertence. The remark, stricken from the record by the court, that petitioner went to the "ABC Store" is of the slightest importance and could not possibly amount to that prejudice which would deny petitioner a fair trial.

The third incident involving the display of the whiskey bottle on counsel's table is also inadequate grounds for granting a writ of habeas corpus. The whiskey bottle should not have been left on the prosecution table during the trial, but its display did not so prejudice petitioner as to deny her a fair trial as guaranteed by the United States Constitution.

The three incidents enumerated by petitioner viewed either separately or combined, did not deprive petitioner of a fair trial with due process as guaranteed by the constitution. Petitioner was well represented by counsel, and the trial court carefully preserved all of her constitutional rights insuring her a fair and impartial trial.

Upon mature consideration of the facts the court finds that petitioner received a fair and impartial trial with due process, that the challenged search and seizure were not unreasonable, and moreover, that the evidence secured thereby and presented at the trial did not contribute to petitioner's conviction.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus be and hereby is denied.