BURL J. GHASTIN AND ANITA MARIE GHASTIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1213–71.   Filed May 22, 1973.

*John C. Leaming*, for the petitioners.
*Chauncey W. Tuttle, Jr.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for their taxable years 1966 and 1967 in the amounts of $104.02 and $121.73, respectively. The issue for decision is whether petitioners may exclude from their gross income under section 119, I.R.C. 1954,[1] a cash subsistence allowance paid by the State of Michigan to Burl J. Ghastin, a uniformed member of the State Police, during the years 1966 and 1967.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Burl J. Ghastin and Anita Marie Ghastin, husband and wife, resided at Wayland, Mich., at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for their taxable years 1966 and 1967 with the district director of internal revenue at Detroit, Mich. Petitioners filed amended returns, claiming a refund for their taxable years 1966 and 1967 with the same district director on February 17, 1969. The refunds claimed on the amended returns were allowed by respondent.

In the years 1966 and 1967 Burl J. Ghastin, hereinafter referred to as petitioner, was a uniformed member of the Michigan State Police serving in the rank of trooper. The Michigan State Police (MSP) is a separate department of the Michigan State government, consisting of commissioned officers, plainclothes detectives, specialists, and uniformed troopers plus civilian support personnel. During the calendar years of 1966 and 1967, the MSP was authorized 1,576 enlisted personnel and on July 1, 1966, the actual number of enlisted personnel employed by the MSP was 1,466. The jurisdiction of the MSP is statewide. However, generally an area served by an organized police force is not served by the MSP except upon request. During the years 1966 and 1967, there were 59 posts or barracks throughout Michigan to which troopers were assigned. Personnel serving in the rank of trooper are primarily engaged in patrol of highways of the State although their duties also include investigating crimes. The post to which a trooper is assigned is his headquarters for all purposes. He checks in and out of his post, files his reports there, and looks to his post supervisors for orders and assignments. The MSP furnishes officers and

---

[1] All references are to the Internal Revenue Code of 1954.

[2] Petitioners in their petition alleged that if the subsistence allowance payment is not excludable, then the amount thereof is deductible as a business expense. This contention is not made on brief and we infer from petitioners' statement on brief that the only issue is whether the payment is excludable under sec. 119, I.R.C. 1954, is an abandonment of the claim that the amount of the payment is a deductible business expense.

troopers with uniforms, weapons, and police vehicles for official business.

During the years 1966 and 1967, the normal work shift for petitioner consisted of 8 consecutive hours. Meals were not scheduled for any specific time. Each trooper ate when the requirements of his patrol permitted. The trooper was permitted to stop for meals at a restaurant having a telephone in the area he was assigned to patrol. The trooper was also permitted to carry his lunch with him and eat on the job in or near his patrol car although few troopers did this. A trooper was permitted to eat at his home only when his home was in his patrol area and convenient to the performance of his duty. The trooper was required to report to his post the location and telephone number at any time he left his patrol car for any reason so his post could reach him. The trooper was on duty during his meal periods. He could be dispatched by his post wherever his services were needed even without allowing him to finish his meal. Three-fourths of the work shifts were at night. The troopers generally ate one meal during an 8-hour work shift whether the shift was in the day or in the evening. Once or twice a week when petitioner worked a day shift he would be assigned to an area which would allow him to eat lunch at home. On these days he ate at home but the remainder of his meals eaten during his work shift were eaten in restaurants. Each trooper was on call during all hours when he was not working.

Petitioner was assigned to the MSP post in Gaylord, Mich., during the years 1966 and 1967. The Gaylord post troopers patrolled a 2,500-mile area. During 1967 petitioner was ordered to Detroit for a week or 10 days during the month of July because of civil disorders in that city. During the time he was in Detroit, petitioner was billeted in the National Guard Armory on Eight Mile Road in Detroit and he ate his meals at the armory. These meals were provided to petitioner, either by the MSP or by the Michigan National Guard. At no other time during 1966 and 1967 was petitioner away from home overnight for business purposes.

The restaurants where petitioner ate during his working hours were adjacent to the highway patrolled or in cities or villages near the highway. Some of the restaurants frequented by petitioner were in cities which the MSP did not patrol, that is cities with municipal police departments. None of the restaurants was owned by the State of Michigan. The MSP did not provide cooking or dining facilities at any of its posts around the State and bachelor troopers who occasionally were billeted at these posts were prohibited from possessing even rudimentary cooking facilities such as hot plates.

During 1966 and 1967 petitioner was paid by the MSP for the following described hours:

| 1966 Description | Hours | 1967 Description | Hours |
|---|---|---|---|
| Regular hours worked | 2,007 | Regular hours worked | 1,930 |
| Overtime paid | 61 | Overtime paid | 111 |
| Compensatory time used | 60 | Compensatory time used | 54 |
| Sick leave used | 22 | Annual leave used | 80 |
| Annual leave used | 104 | Sick leave used | 8 |
| | | Holiday paid | 8 |
| Total | 2,254 | Total | 2,191 |

Compensatory time used represents overtime work performed in 1964 and 1965 for which petitioner had received no pay. In 1966 and 1967 he was permitted to be compensated for this previously worked overtime by taking off time for which he was not charged with leave. Sick leave, annual leave, and holidays were hours for which petitioner was paid when he actually performed no work.

Officers of the MSP, including troopers, received subsistence allowances. These allowances were paid for subsistence within the post area. When the troopers traveled outside the post area, they were reimbursed for their actual expenses within dollar limits.

Sometime prior to 1965, the subsistence allowance had been set at $3 a day based on three meals a day at $1 each. From July 1, 1965, until July 1, 1966, each trooper received a monthly subsistence allowance computed at $60 a month less $8.40 Federal income tax withheld, with a net of $51.60. The amount was paid to the trooper whether he was on duty, on vacation, or on sick leave with the exception that when a trooper was on extended sick leave (more than 4 days) his flat rate subsistence allowance would be reduced. From July 1, 1966, through the end of the taxable year 1967, the subsistence allowance was computed at 34 cents per hour in the grade of corporal. This amount was computed at $60 per month divided by 174 hours in a month and was included in the officer's regular paycheck from which Federal tax and State retirement was withheld. State retirement was in the amount of 5 percent.

Beginning July 1, 1966, the subsistence allowance of a trooper with 2 years or less service was 36 cents an hour, for a trooper with more than 2 years service the allowance was 35 cents an hours, for sergeants 32 or 33 cents an hour. The hourly subsistence allowance for lieutenants, captains, and majors was 31 cents, 18 cents, and 19 cents, respectively. Lieutenant colonels and colonels received no subsistence allowance.

Subsistence allowance for overtime worked in excess of 8 hours per

day was at the rate of 1½ times the subsistence rate. This subsistence amount was also used in the computation of State Police retirement pay.

Before July 1, 1966, the monthly subsistence allowance was reduced if a trooper was traveling on official duty outside his post area and reimbursed for his actual travel expenses. After July 1, 1966, and through December 31, 1967, a trooper would continue to receive his hourly subsistence allowance while traveling on official duty outside his post even though he was receiving his full travel expenses.

Petitioner kept no records of the cost of the meals he purchased at restaurants during working hours in the years 1966 and 1967. He did not account to the MSP for any of the costs incurred.

During the first 6 months of 1966 petitioner received a cash subsistence allowance at the rate of $60 per month or a total of $360. During the last 6 months of 1966 and for the entire year 1967, petitioner received 36 cents per hour for cash subsistence allowance for regular time and 54 cents per hour as subsistence allowance for overtime.

On their original joint Federal income tax return for 1966 petitioners included in gross income the amounts received as a cash subsistence allowance. On their amended joint Federal income tax return (Form 1040-X) for 1966, petitioners excluded the cash subsistence allowance. The refund of $104 resulting from this exclusion on their amended return was made to petitioners.

On their original joint Federal income tax return for 1967 petitioners included in gross income the amounts received as a cash subsistence allowance. On their amended joint Federal income tax return (Form 1040-X) for 1967, petitioners excluded a cash subsistence allowance in the amount of $720. The refund of $121.73 resulting from this exclusion was made to petitioners.

Respondent determined in his notice of deficiency that the cash subsistence allowances were not excludable from petitioners' gross income and on this basis determined deficiencies in the exact amounts of the refunds previously made to petitioners for the years 1966 and 1967.

OPINION

Petitioner contends that the amounts he received as a cash subsistence allowance in his taxable years 1966 and 1967 are excludable from his gross income under section 119, which provides as follows:

SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

This statute sets the following three conditions for the exclusion by a taxpayer of the value of meals furnished by his employer: (1) Meals must be furnished to the employee; (2) the meals must be furnished to the employee for the convenience of the employer; and (3) the meals must be furnished on the business premises of the employer.

Petitioner contends that all these conditions are met by the payment to him of a subsistence allowance in accordance with the provisions of Michigan law.[3] He contends that the facts in this case do not substantially differ from those in the cases of *United States* v. *Barrett*, 321 F. 2d 911 (C.A. 5, 1963); *United States* v. *Morelan*, 356 F. 2d 199 (C.A. 8, 1966), affirming 237 F. Supp. 879 (D. Minn. 1965); and *United States* v. *Keeton*, 383 F. 2d 429 (C.A. 10, 1967), affirming per curiam 256 F. Supp. 576 (D. Colo. 1966), each of which held similar allowances to be excludable from a State trooper's income under section 119.

Respondent contends that the facts in the instant case distinguish it from the cases relied on by petitioner, but his primary contention is that those cases are an incorrect interpretation of the statute. Respondent relies on *Wilson* v. *United States*, 412 F. 2d 694, 697 (C.A. 1, 1969), in which the court refused to follow the *Barrett*, *Morelan*, and *Keeton* cases.

Although the instant case is distinguishable on its facts from the cases relied upon by petitioner,[4] if we were to accept the common

---

[3] Mich. Comp. Laws, sec. 28.7 (1948) (Mich. Stat. Ann. sec. 4.437).

[4] In *United States* v. *Barrett,* 321 F. 2d 911 (C.A. 5, 1963), the taxpayer-patrolman was required to submit an expense account showing the sum spent for each meal each day and was repaid up to a maximum of $4 a day for the amount certified as actually spent. In the instant case no such requirement was imposed on petitioner. In fact he could eat a sandwich in his patrol car and continue to receive the meal allowance.

In *United States* v. *Morelan,* 356 F. 2d 199, 201, 204 (C.A. 8, 1966), the taxpayer-patrolman was required to eat in public restaurants "to insure public safety and obedience to law through the physical presence of the officers in uniform and to facilitate their availability to the public for the reporting of accidents and the seeking of information with reference to the traffic and motor vehicle laws of the State." In the instant case, the petitioner was permitted to eat his meals at his residence if he were assigned to patrol an area encompassing his home or to bring his lunch and eat it in or near his patrol car.

In *United States* v. *Keeton,* 383 F. 2d 429 (C.A. 10, 1967), the taxpayer-patrolman was required to take his meals at a public restaurant while on duty as in the *Morelan* case. Furthermore, the meal allowance in *Keeton* was specifically for one meal per day, whereas in the instant case the meal allowance was under the statute a subsistence allowance for three meals a day. There is absolutely no suggestion in the record that the two meals eaten by petitioner while not on duty were eaten at any place other than at petitioner's home. In the *Keeton* case, the amount of the meal allowance did not enter into computations for retirement purposes whereas it does in the instant case.

holding of those cases (1) that the word "meals" as used in section 119 includes a cash "allowance for meals," (2) that "the convenience of the employer" is satisfied when the choice of the restaurant and meal to be selected is left to the employee, and (3) that the "business premises" of the employer includes public restaurants near the public highways, petitioner in this case would be entitled to exclude at least some portion of the subsistence allowance he received from his income. We, therefore, will take the course of deciding whether to follow these cases or the decision of the Court of Appeals for the First Circuit in the *Wilson* case, as to the meaning of the word "meals." [5]

In our view the interpretation of the term "meals" as used in section 119 which comports with its clear language and its legislative history is that adopted by the First Circuit in the *Wilson* case. In that case the court held that under section 119, the value of meals is excludable only if the meals are furnished by the employer in kind. This is the view we adopted in *Charles N. Anderson*, 42 T.C. 410 (1964), reversed on other grounds 371 F. 2d 59 (C.A. 6, 1966). See also *Michael A. Tougher, Jr.*, 51 T.C. 737 (1969), affirmed per curiam 441 F. 2d 1148 (C.A. 9, 1971), certiorari denied 404 U.S. 856 (1971), and S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., pp. 190–191 (1954), which states:

Section 119 applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income to the extent that such allowances constitute compensation.

[5] The U.S. Court of Appeals for the Sixth Circuit, to which an appeal in this case would lie, in *Commissioner* v. *Anderson*, 371 F. 2d 59, 65 (C.A. 6, 1966), stated as follows with respect to *United States* v. *Barrett*, 321 F. 2d 911 (C.A. 5, 1963), and *United States* v. *Morelan*, 356 F. 2d 199 (C.A. 8, 1966) :

"The phrase 'on the business premises of the employer', as used in Sec. 119, has been the subject of judicial construction in other reported decisions. In the case of United States v. Barrett, 321 F. 2d 911 (C.A. 5, 1963) the issue confronting the Court was whether state highway patrolmen were entitled to exclude from gross income the reimbursement received by them from the State of Mississippi for meals purchased at various locations along the highway while on duty. The Commissioner there sought to contend that 'business premises' was confined to the State Patrol Headquarters. The Court concluded that since the 'business of the state law enforcement agency was not confined to the patrol headquarters, but rather, it covers every road and highway in the State 24 hours a day every day', the value of meals taken along the highway while on duty was excludable.

"A similar issue involving the exclusion of the value of meals furnished a highway patrolman was presented in the case of United States v. Morelan, 356 F. 2d 199 (C.A. 8, 1966) with a similar result being reached. In affirming the decision of the District Judge, reported at 237 F. Supp. 879, the Appeals Court concluded that restaurants near or adjacent to highways were 'on the business premises of the employer' for the purpose of determining the excludability of the value of meals taken there by a highway patrolman while on duty.

"Although the Court in each of the foregoing cases rejected the Commissioner's contention that 'business premises' would be limited to premises owned or controlled by the employer, the decisions are consistent with the view that the premises must be those upon which some portion of the employee's duties were performed. * * *"

While the Sixth Circuit did not disapprove of the definition of "business premises" used in the *Barrett* and *Morelan* cases, we do not consider that this circuit in any way accepted the meaning of "meals" as used in those cases. There was no issue before the Sixth Circuit as to the meaning of the term "meals" as used in sec. 119. See *Michael A. Tougher, Jr.*, 51 T.C. 737 (1969), affirmed per curiam 441 F. 2d 1148 (C.A. 9, 1971).

A similar statement appears in H. Rept. No. 1337, 83d Cong., 2d Sess., p. A39.

In our view petitioner in this case was not furnished "meals" by his employer within the meaning of section 119.

The facts in this case also fail to meet the second test of the statute that the meals be furnished for the convenience of the employer. Section 1.119–1(a)(2), Income Tax Regs., contains the following provision:

> (2) *Meals furnished without a charge.* (1) Meals furnished by an employer without charge to the employee will be regarded as furnished for the convenience of the employer if such meals are furnished for a substantial noncompensatory business reason of the employer. If an employer furnishes meals as a means of providing additional compensation to his employee (and not for a substantial noncompensatory business reason of the employer), the meals so furnished will not be regarded as furnished for the convenience of the employer. * * *

The subsistence allowance paid to petitioner had its origin in a payment to troopers for three meals a day at a dollar a meal. The payment remained in theory payment for three meals a day although troopers generally ate only one meal during their 8-hour work shift. Even though they were on call 24 hours a day, they apparently generally ate their other two meals at home.

The allowance paid to petitioner during the first half of his taxable year 1966 was paid on a flat rate which did not take into consideration whether the trooper was on vacation, sick leave, compensatory time, or worktime. The trooper was not required to account for his meal expenses except when on travel status. The record indicates that for the periods after July 1, 1966, and through December 31, 1967, a trooper would continue to receive his subsistence allowance supplement (36 cents per hour for petitioner) while at the same time receiving full travel expenses.

The hourly subsistence allowance supplement for the period after July 1, 1966, provided for increases in the hourly rate for the supplement for overtime hours and was taken into consideration for computation of State retirement benefits.

The subsistence allowance decreased as the uniformed member of the MSP was promoted in rank and, we assume, in pay.

Under the provisions of respondent's regulation the subsistence allowance was not paid to petitioner for the convenience of his employer, MSP, since the evidence amply demonstrates that the subsistence allowance was a means of furnishing Michigan troopers with additional compensation and served no other purpose of the employer.

The record shows that a trooper was entitled to eat his meal during his 8-hour duty shift at his own home if his home was in his assigned patrol territory, or to carry a lunch with him in his police vehicle. Section 1.119–1(a)(3)(i) states: "If an employer provides meals

which an employee may or may not purchase, the meals will not be regarded as furnished for the convenience of the employer." This regulation is a reasonable interpretation of the statute. Under this provision of the regulations, the subsistence allowance paid to petitioner was not for the convenience of his employer.

In view of our holding that subsistence payments to petitioner do not meet the first two requirements of section 119, we need not decide whether the restaurants at which petitioner ate while on duty are includable within the phrase "the business premises of the employer" as used in section 119.

Reviewed by the Court.

*Decision will be entered for the respondent.*