ROBERT J. KOWALSKI AND NANCY A. KOWALSKI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 112-73.    Filed October 14, 1975.

*Carl D. Cordes, Herrick K. Lidstone,* and *Richard Kilcullen,* for the petitioners.

*Irwin R. Cohen* and *Marwin A. Batt,* for the respondent.

46

48

OPINION

Petitioner's primary position in this case is that the monthly amount he received does not constitute gross income under section 61(a). In the alternative petitioner contends that if the monthly allowance does constitute gross income, it is properly to be excluded under section 119 or, if not excludable under that section, is deductible as an ordinary and necessary business expense under section 162(a)(2).

In support of his contention that the monthly allowance is not income under section 61(a), petitioner relies primarily on the decision of the United States Court of Appeals for the Third

Circuit, to which an appeal in this case would lie, in *Saunders v. Commissioner*, 215 F. 2d 768 (3d Cir. 1954), revg. 21 T.C. 630 (1954), decided September 22, 1954. In fact, petitioner argues that under our holding in *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we are bound to follow the decision of the Third Circuit in the *Saunders* case.

As petitioner points out, the Third Circuit in the *Saunders* case concluded that cash rations payments received by New Jersey State policemen under circumstances not substantially different from those involved in the instant case were not required to be included in gross income under section 22(a), I.R.C. 1939, the predecessor section of section 61(a). In reaching this conclusion, the court considered first whether the cash payment to defray the cost of meals was furnished to State policemen by the State of New Jersey for the "convenience of the employer," and having concluded that it was, proceeded to discuss whether it was properly excludable under the rationale of the regulations excluding from gross income quarters or meals furnished to employees for the convenience of the employer. In that case the court concluded that the "rationale of the rule should make it applicable to determine the extent of gross income either when quarters and meals are furnished in kind or cash is paid in lieu thereof." The court pointed out that "Admittedly, the payment of cash to an employee is normally compensatory and probably more obviously so than a payment in kind," but that "an employee may be furnished cash which is not compensation." The court then stated, at page 772:

In the past, the Bureau has recognized that cash received by an employee for similar purposes may not be compensation: in O.D. 11, 1 Cum. Bull. 66 (1919), it was held that an American Red Cross employee receiving maintenance but no pay should return as income only the excess of the amount received over his actual living expenses; and in O.D. 514, 2 Cum. Bull. 90 (1920), it was ruled that supper money furnished an employee working after regular hours and not considered as compensation was furnished for the convenience of the employer and was not taxable. Likewise, the courts have considered maintenance furnished in kind and in cash on the same basis for determining an individual's taxable compensation. In Jones v. United States, 1925, 60 Ct. Cl. 552, it was held that neither the value of living quarters furnished or cash in lieu of quarters paid an army officer were income; and citing the Jones case, it was stated in Bercaw v. Commissioner, 4 Cir. 1948, 165 F. 2d 521, at page 524: "This conclusion [that payments by an army officer for meals and 'striker' service are not deductible for tax purposes] is inescapable when it is

remembered that this officer has been paid commutation of quarters and a subsistence allowance, both of which allowances are not considered as income for the purposes of taxation." * * *

The *Saunders* case was decided under the provisions of the 1939 Code which contained no statutory exclusion from gross income for meals and lodging and was decided prior to the decisions of the Supreme Court in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955), and *Commissioner v. LoBue*, 351 U.S. 243 (1956), which as hereinafter discussed amplified prior decisions concerning the congressional intent in defining gross income to include "all income from whatever source derived" except as otherwise provided by statute. For these reasons, we conclude that the *Saunders* case is not controlling here and under our holding in the *Golsen* case we are not required to follow it.

In our view the Third Circuit in *Jacob v. United States*, 493 F. 2d 1294, 1297 (3d Cir. 1974), has recognized the distinction in those cases involving claimed exclusion from gross income arising under the 1939 Code and the 1954 Code. In *Jacob v. United States, supra,* the Third Circuit held that a doctor required to reside on the premises of an institution for mentally retarded persons to be available on a 24-hour-per-day basis was entitled to exclude under section 119 the value of groceries provided him by his employer as "meals" furnished to him. In reaching its conclusion, the court referred to "the so-called 'state trooper' cases," holding cash allowances to be excludable under section 119, although it recognized that these cases were "not exactly in point." One of the so-called "state trooper" cases cited was the *Saunders* case, the following footnote being made to the citation:

*Saunders, supra,* involved facts arising prior to 1954 when section 119 was added to the Internal Revenue Code, but the reasoning of *Saunders* was followed in the above-cited post-1954 cases.

This note by the Third Circuit is a recognition that the law applicable to years governed by the 1939 Code differs from the law applicable to years governed by the 1954 Code, and that the *Saunders* case is not "squarely in point" with cases governed by the 1954 Code.

Section 61(a) states that "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." The broadness of this definition has on numerous occasions been recognized by the Supreme Court. In

*Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429-430 (1955), the Court stated:

But Congress applied no limitations as to the source of taxable receipts, nor restrictive labels as to their nature. And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted. *Commissioner v. Jacobson,* 336 U.S. 28, 49, [69 S. Ct. 358, 369, 93 L.Ed. 477]; *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87-91, [55 S. Ct. 50, 51-53, 79 L.Ed. 211]. * * *

Shortly thereafter in *Commissioner v. LoBue,* 351 U.S. 243, 246 (1956), the Court pointed out that it had "repeatedly held that in defining 'gross income' as broadly as it did * * * Congress intended to 'tax all gains except those specifically exempted.' "

In the instant case, even though petitioner's employer, the State of New Jersey, furnished the meal allowance to State troopers because it was more convenient to provide a meal allowance than to provide meals for these troopers and because in many instances the proximity of troopers to the area in which their work was being conducted saved time of the troopers in eating meals, the allowance was paid for food for the troopers which otherwise the troopers would have found it necessary to provide for themselves. Also, it is clear that petitioner would have been permitted to bring his lunch and eat it in or near his patrol car and still receive the same meal allowance. Even though we have found that the meal allowance was not intended as additional compensation, it was obviously compensatory to a trooper to the extent it paid for food which he otherwise would have had to pay for from some other source. We conclude, under section 61, that "except as otherwise provided" in the income tax law, the meal allowance received by petitioner is includable in his gross income. See *United States v. Woodall,* 255 F. 2d 370 (10th Cir. 1958).

In the *Saunders* case, the court recognized that the definition of "gross income" in the taxing statutes was broad, but relying on the long history of meals furnished for the convenience of the employer being excluded from income of taxpayers and the Commissioner's regulations so providing, concluded that there was in fact an exclusion in the income tax laws from gross income for meals or their equivalent furnished for the convenience of the employer. Such an exclusion is now provided in section 119 where the requirements of that section are met.

Petitioner argues that the legislative history of section 119 shows that Congress did not intend to change the "pre-existing law" with respect to cash payment for meals as set forth in the *Saunders* case when section 119 was enacted dealing with the exclusion of meals and lodging from gross income. We do not so interpret this legislative history but rather interpret it to indicate that the only exclusion for meals and lodging intended by Congress to be available to any taxpayer other than members of the Armed Forces after the enactment of the 1954 Code were meals and lodging excludable under the provisions of section 119. The effective date of the enactment of the 1954 Code which contained for the first time any provisions for exclusion of meals and lodging furnished for the convenience of the employer was August 16, 1954. Obviously, the committee reports all preceded the effective date of the 1954 Code, which on that date had been enacted by Congress and signed by the President. The decision of the Third Circuit in *Saunders v. Commissioner, supra,* as above noted was entered on September 22, 1954, over a month after the final enactment of the 1954 Code.

Section 119 in a form different from its final enactment appeared in the House version of H.R. 8300, which when enacted was the Internal Revenue Code of 1954. H. Rept. No. 1337, to accompany H.R. 8300, 83d Cong., 2d Sess. (1954), stated as follows with respect to section 119:

*Section 119. Meals or lodging furnished for convenience of employer*

This section provides a statutory test for determining the extent to which an employee may exclude from gross income the value of meals or lodging furnished by the employer.

Existing law, as currently interpreted by the Internal Revenue Service and by certain court decisions requires that if meals or lodging represent compensation the value thereof must be included in gross income, even though the employee must accept such meals or lodging in order properly to perform his duties.

Under section 119, if meals or lodging (1) are furnished at the place of employment, and (2) are required to be accepted by the employee at the place of employment as a condition of his employment, the value thereof shall be excluded from gross income, notwithstanding the fact that such meals or lodging represent additional compensation to the employee. However, if the two foregoing requirements are not met, the value of any meals or lodging furnished the employee must be included in his gross income to the extent that they constitute compensation. This section applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income, as under existing law, to the extent that such allowances represent compensation.

The Senate Finance Committee Report changed the provision of the House bill to the provision that now appears in section 119. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. (1954), explains the change as follows:

*Section 119. Meals and lodging furnished for convenience of employer*

This section corresponds to section 119 of the bill as passed by the House. Existing law, as currently interpreted by the Internal Revenue Service and certain court decisions, requires that if meals or lodging represent compensation the value thereof must be included in gross income even though the employee must accept such meals or lodging in order properly to perform his duties. Under section 119 of the bill as passed by the House if meals or lodging are (1) furnished at the place of employment, and (2) are required to be accepted by the employee at the place of employment as a condition of the employment, the value thereof is excludable from the employee's gross income. Under section 119 as amended by your committee, there is excluded from the gross income of an employee the value of meals or lodging furnished to him for the convenience of his employer whether or not such meals or lodging are furnished as compensation. In the case of meals the exclusion is permitted only if the meals are furnished on the business premises of the employer. In the case of lodging the exclusion is permitted only if the employee is required to accept the lodging on the business premises of the employer as a condition of his employment. The phrase "required as a condition of his employment" means required in order for the employee to properly perform the duties of his employment.

Section 119 applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income to the extent that such allowances constitute compensation.

In the Conference report, the Senate version of the bill was adopted. The statement in the House report that "any cash allowances for meals or lodging received by an employee will continue to be includible in gross income, as under existing law, to the extent that such allowances represent compensation" and the statements in the Senate report that "section 119 applies only to meals or lodging furnished in kind" and that "Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income to the extent that such allowances constitute compensation" must therefore be viewed in the light of the case law prior to the decision in the *Saunders* case.

As we pointed out in our opinion in *Robert H. Saunders,* 21 T.C. 630, 634, which was decided on January 29, 1954, while the enactment of the 1954 Code was under active consideration in Congress—

There are numerous cases in which it has been held that subsistence. and quarters furnished in kind to an employee did not result in realization of income but the *Jones* case, *supra,* [*Clifford D. Jones v. United States,* 60 Ct.Cl. 552 (1925)] which dealt with cash allowances paid an Army officer in commutation thereof, [meals and lodging] appears to be the only one in which it has been held that such cash allowances were not income. This Court specifically distinguished that case in *Gunnar Van Rosen,* 17 T.C. 834, 839-840, to wit:

"while the *Jones* case is authority for the exclusion from gross income by military personnel of cash allowances made to them for subsistence and quarters, it does not, in our opinion, require or justify an extension of the rule therein to similar allowances made to civilian personnel."

Therefore, at the time the enactment of section 119 was under consideration, the only situation in which a cash payment had been considered in a court case to be excludable from gross income was the cash payment to Army personnel in lieu of quarters and rations.[5]

In our view the explanation of section 119 that "any cash allowances for meals or lodging received by an employee will continue to be includible in gross income, as under existing law, to the extent that such allowances represent compensation" was made in the committee reports in the light of the knowledge that the only situation in which such cash allowances had not, under existing law, been held to be includable in income as representing compensation was in the case of military personnel.

Soon after the decision in *Clifford D. Jones v. United States,* 60 Ct. Cl. 552 (1925), the exclusion of the cash allowances for quarters and rations from income of military personnel was written into respondent's regulations and a comparable provision has been included in the regulations since that time.

---

[5] There were, of course, outstanding the two rulings referred to in *Saunders v. Commissioner,* 215 F. 2d 768 (3d Cir. 1954), but these were only rulings of the Revenue Service involving special situations. The Commissioner does at times, by ruling, permit the exclusion from income of items without basis in case law. Prior to a statutory provision for a *deduction from gross income* of certain moving expenses, the Commissioner ruled in Rev. Rul. 54-429, 1954-2 C.B. 53, that where an employee is transferred from one permanent duty station to another, reimbursement received for cost of moving himself, his immediate family, and his household goods is not includable in income. This ruling specifically modified prior rulings that amounts paid by the Government for transportation of the families of Army officers (O.D. 1135, 5 C.B. 174 (1921)) and of dependents of officers and men of the Coast Guard (I.T. 3022, C.B. XV-2, 76 (1936)) from one permanent duty station to another is additional compensation to the recipient. I.T. 3022 relied on our holding in *Leland D. Webb,* 1 B.T.A. 759 (1925), that a naval officer could not deduct the cost of transportation of his wife from one permanent duty station to another. Rev. Rul. 54-429 cites no change in case law but merely a change in position by the Commissioner. Compare O.D. 514, 2 C.B. 90, to *Darrell Spear Courtney,* 32 T.C. 334, 344-345 (1959), and cases there cited.

In our view the lengthy discussion of whether, under section 119, the "value of meals" could properly be interpreted to include the value of groceries cooked into meals on the employer's premises in the opinion of the Third Circuit in *Jacob v. United States, supra,* in effect is a recognition that section 119 is the only basis for excluding the value of meals and lodging from the income of a taxpayer other than a member of the Armed Forces since the enactment of the 1954 Code. Otherwise, having concluded that the groceries were furnished to the taxpayer in the *Jacob* case for the convenience of the employer, the court could merely have cited its opinion in the *Saunders* case and the discussion of the provisions of section 119 and the regulations issued thereunder would have been unnecessary.

Since we have concluded that the meal allowance paid to petitioner in this case is includable in his gross income under section 61(a), it is necessary to consider whether the allowance is excludable under section 119.[6] That section provides for the exclusion from the gross income of an employee of "the value of any, meals" furnished to him by his employer for the convenience of the employer. Section 1.119-1(c)(2) of respondent's regulations provides that "The exclusion provided by section 119 applies only to meals and lodging furnished in kind by an employer to his employee." It was this provision of the regulations, as well as the statutory provision referring to the "value" of meals that was under consideration in the *Jacob* case.

As the court pointed out in the *Jacob* case, and as we pointed out in *Burl J. Ghastin,* 60 T.C. 264, 269-270 (1973), the Courts of Appeals for several circuits have held cash allowances to State troopers to be excludable from the trooper's gross income under section 119 where the courts considered the cash allowances to be furnished for the convenience of the employer. *United States v. Barrett,* 321 F. 2d 911 (5th Cir. 1963), affg. 205 F. Supp. 307

---

[6] SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

(S.D. Miss. 1962); *United States v. Morelan,* 356 F. 2d 199 (8th Cir. 1966), affg. 237 F. Supp. 879 (D. Minn. 1965); *United States v. Keeton,* 383 F. 2d 429 (10th Cir. 1967), affg. 256 F. Supp. 576 (D. Colo. 1966).

The District Court opinion in the *Barrett* case had held the cash payments not to constitute income under section 61 without citation of cases but merely with the statement (205 F. Supp. at p. 308):

The Congress has not seen fit to enact a statute making such money income. The Commissioner cannot, under the guise of an interpretation, enlarge upon a tax statute and create a tax incident where none otherwise exists.

The Fifth Circuit after reciting the fact that the District Court held the amounts paid to the Mississippi highway patrolmen for reimbursement for the cost of meals purchased while on duty not to be includable in their gross income and, stating "we affirm," proceeded in its opinion to discuss the case and affirmed it on the reasoning that the amounts of the cash payments were excludable under section 119.

We pointed out in *Burl J. Ghastin, supra,* that the facts in *Barrett, Morelan,* and *Keeton* each differed. The facts in each of those cases differ somewhat from the facts in the instant case and the facts in *Ghastin* have some difference from the facts in the instant case. However, if we accepted the common holding of the *Barrett, Morelan,* and *Keeton* cases, that the words "value of meals" as used in section 119 include a cash allowance for meals, we would then have to consider whether all the other aspects of section 119 were met in the instant case so as to entitle petitioner to exclude from income the cash allowance he received from the State of New Jersey. In the *Ghastin* case we stated that in our view "meals" as used in section 119 was properly interpreted in *Wilson v. United States,* 412 F. 2d 694, 697 (1st Cir. 1969), affg. 292 F. Supp. 195 (D. N.H. 1968), to refer to meals furnished in kind. We stated our agreement with the holding in the *Wilson* case that the legislative history clearly supported the interpretation that section 119 applied only to meals furnished in kind.

In the *Jacob* case the Third Circuit followed its citation of the *Keeton, Morelan,* and *Barrett* cases with "but see *Wilson v. United States,* 412 F. 2d 694 (1st Cir. 1969)," but did not state its view as to which interpretation of section 119 it considered proper, merely concluding that those cases were not strictly in

point. The issue considered by the Third Circuit in the *Jacob* case was considered by that court to be comparable to the issue in *Michael A. Tougher, Jr.*, 51 T.C. 737 (1969), affd. per curiam 441 F. 2d 1148 (9th Cir. 1971), in which this Court held that an FAA employee living on a remote island in the Pacific Ocean was not entitled to exclude from gross income the value of groceries furnished from an FAA commissary since such groceries did not constitute meals within the meaning of section 119. The Third Circuit stated that it rejected the interpretation of the *Tougher* case that the term "meals" should be construed to apply only to prepared, ready-to-eat portions of food, but held that "the furnishing of groceries to the taxpayer * * * where such groceries were furnished for the convenience of the employer on the premises of the employer and where such groceries were prepared into meals and consumed by the taxpayer on the employer's premises, constitutes meals furnished within the meaning of section 119."

In our view the meal allowance furnished to petitioner is not excludable under section 119 since it was a cash allowance and not meals furnished in kind. For this reason it is unnecessary for us to consider whether the facts here would otherwise bring the meal allowance furnished to petitioner within the scope of section 119.

Petitioner makes a final argument that the New Jersey State police are in effect part of the military and therefore should be entitled to exclude the cash allowance on the same basis as military personnel are entitled to such an exclusion. Petitioner quotes the provisions of section 1.61-2(b), Income Tax Regs.,[7] that amounts received by members of the Armed Forces, Coast and Geodetic Survey, and Public Health Service as commutation of quarters and as subsistence allowances and the value of

---

[7] Sec. 1.61-2(b) *Members of the Armed Forces, Coast and Geodetic Survey, and Public Health Service.* Subsistence and uniform allowances granted commissioned officers, chief warrant officers, warrant officers, and enlisted personnel of the Armed Forces, Coast and Geodetic Survey, and Public Health Service of the United States, and amounts received by them as commutation of quarters, are to be excluded from gross income. Similarly, the value of quarters or subsistence furnished to such persons is to be excluded from gross income. For the exclusion from gross income of—

(1) Disability pensions, see section 104(a)(4) and the regulations thereunder;
(2) Mustering-out payments, see section 113 and the regulations thereunder;
(3) Miscellaneous items, see section 122.

However, the per diem allowance in lieu of subsistence and the mileage allowance received by such persons while in a travel status or on temporary duty away from their permanent stations shall be included in their gross income.

quarters and subsistence furnished to them are excludable from their gross income. Petitioner argues that the same rationale which justifies the exclusion of such amounts by military personnel justifies the exclusion of the meal allowance by a State trooper. In our view the two situations are not comparable. In fact, Congress in the 1954 Code enacted as section 120 thereof a provision allowing an exclusion of any amount received as a statutory subsistence allowance by a taxpayer who was employed as a police official by any State, territory, or possession of the United States to the extent such statutory subsistence allowance did not exceed $5 a day. The House and Senate reports with respect to the enactment of section 120 both referred to the section as "new." [8] In our view the fact that this provision was placed in the 1954 Code even though the provision was repealed in 1958, clearly indicates not only that a cash allowance was not contemplated under section 119 but also that it was not the view of Congress that policemen would come under the exclusion then long accepted for military personnel.

Petitioner's final contention is that he is entitled to deduct the entire amount he received as a meal allowance as travel expenses while away from home. Petitioner points out that travel away from home was held in *United States v. Correll,* 389 U.S. 299 (1967), to exclude travel requiring "neither sleep nor rest" but

---

[8] H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. (1954), stated with respect to sec. 120:

*Section 120. Statutory subsistence allowance received by police*

This section is new and provides for an exclusion from gross income for any amount received as a statutory subsistence allowance by a taxpayer who is employed as a policeman by any State, Territory, or possession of the United States or any political subdivision thereof or by the District of Columbia.

The term "police official" in this section includes an employee of any of the foregoing governmental units who has police duties, such as a sheriff, a detective, or a State police trooper, however designated. For example, it encompasses the State police in Georgia who are designated the Georgia Bureau of Investigation.

The exclusion under this section is limited to a statutory subsistence allowance which does not exceed the rate of $5 per day. To the extent that any amounts received as a statutory subsistence allowance are excludable from gross income under this section, no deduction is allowable for expenses in respect of which the statutory allowance is paid; however, any expenses in excess thereof may be deducted if they are otherwise allowable as a deduction. For example, if a State statute provides a subsistence allowance of $5 per day, but the taxpayer, a State police trooper, incurs expenditures of $7.50 for meals while away from home overnight on official police duties, he would be entitled to a deduction of $2.50 under subparagraph (2)(B) of section 62 (relating to expenses for travel away from home). The remaining $5 would be disallowed as a deduction under this section since he is permitted to exclude $5 as a statutory subsistence allowance.

S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. (1954), contained substantially the same statements with respect to sec. 120.

that the record shows that petitioner was away from his duty station in Hightstown Barracks and Newark for at least 36 days on assignment requiring sleep and rest. Petitioner points out that since he spent at least the amount of his meal allowance while on active duty and since he was on active duty at times away from both his residence and his duty station in Hightstown Barracks and Newark, he should be entitled to the full amount of his meal allowance as a deduction.

Clearly, petitioner was away from home for a substantial portion of the time he was on active duty, whether his home be considered as his place of residence or as the Hightstown duty station. We have found from the records petitioner kept that he spent 200 nights away from home on active duty. Certain of these nights were spent at the Hightstown duty station. However, in a situation such as petitioner's where his duty station was changed at various times during the year, in our view under our holding in *Hollie T. Dean*, 54 T.C. 663, 667 (1970), that where a taxpayer does not have a *"nontemporary* principal place of business away from the vicinity of his residence, then his place of residence remains his home for tax purposes," we conclude that petitioner in this case was away from home within the meaning of section 162(a)(2) for the 200 days that we found him to be "away from home."

Respondent does not contend that petitioner, who received an advance to cover his meals of only about $5 a day, is required under section 274 to produce receipts for his meals to be entitled to a deduction under section 162(a)(2) if he is able otherwise to establish the number of days he was away from home overnight.

Petitioner was given an advance for meals while on active duty. The 200 nights he spent away from home were most of the days he was on active duty, except for the period January to March 9, 1970, when he was assigned to a radar team on the New Jersey Turnpike and slept at his home in Linden, and for a period from May 7 through June 28, 1970, when he was screening applicants and worked from his home, the total of the two periods being approximately 4 months. Petitioner spent two-thirds of his active duty period away from home and is therefore entitled to deduct two-thirds of the $1,704 meal allowance to which he was entitled

as a State trooper in New Jersey, making a total deduction for meals while away from home for the year of $1,136.

> *Decision will be entered under Rule 155.*

Reviewed by the Court.

WILBUR, *J.,* concurring: While I concur with the majority, I add a few additional thoughts concerning the extraordinary contention that meals furnished by cash contributions of the employer are excludable from gross income *without regard to section 119.* This strikes me as demonstratively false for several reasons:

(1) Cash is more presumptively compensatory than in-kind benefits. In permitting an exclusion for meals and lodging provided in kind, Congress required that the in-kind benefits be provided (a) on the business premises, (b) for the convenience of the employer, and (c) in the case of lodging, as a condition of employment. If these benefits, when provided through cash payments to the employee, can be excluded solely on the basis that they are noncompensatory, conditions (a) and (c) can be effectively eliminated from the statute. Since in determining whether the cash payment is compensatory the considerations invoked by the "convenience of the employer test" (regardless of what label we ascribe to the criterion) will be applied, the only condition of section 119 that would be applicable would be the convenience of the employer.

(2) This would mean that where lodging is provided very close to the business premises of the employer for the convenience of the employer the additional requirements of section 119 that the lodging be provided on the business premises as a condition of employment can be avoided by simply providing the equivalent of the rental payment to the employee in cash. The strict construction of the statute provided by *Charles N. Anderson,* 42 T.C. 410 (1964), revd. 371 F. 2d 59 (6th Cir. 1966),[1] can easily be circumvented.

(3) Even those courts that have liberally construed section 119[2] to encompass cash payments nevertheless recognize that

---

[1] See also *Jack B. Lindeman,* 60 T.C. 609, 617 (1973) (concurring opinion of Tannenwald, *J.*).

[2] *United States v. Barrett,* 321 F. 2d 911 (5th Cir. 1963), affg. 205 F. Supp. 307 (S.D. Miss. 1962); *United States v. Morelan,* 356 F. 2d 199 (8th Cir. 1966), affg. 237 F. Supp,

Congress in any event predicated the exclusion on *all* of the conditions contained in section 119 being met. We, of course, have held that the benefits of the exclusion provided by section 119 are not available in the case of cash' payments. (*Burl J. Ghastin*, 60 T.C. 264 (1973)). It would be anomalous in the extreme to adhere to this position and nevertheless conclude that an exclusion for cash payments is permissible without regard to section 119 if they are for the convenience of the employer (however differently a criterion invoking the same considerations may be phrased) and therefore noncompensatory.

(4) It would be an extraordinary interpretation of the statute to permit cash payments for meals and lodging to be excluded under conditions more favorable than that provided for in-kind benefits under section 119. Additionally, the enactment and repeal of section 120, which dealt specifically with subsistence payments for meals and lodging would be completely ignored by such interpretation.[3]

QUEALY, *J.*, agrees with this concurring opinion.

DRENNEN, *J.*, concurring and dissenting: I agree with the majority that *Jack E. Golsen*, 54 T.C. 742 (1970), does not require us to follow the conclusion of the Third Circuit in *Saunders v. Commissioner*, 215 F.2d 768 (1954), for the reasons stated in the majority opinion. I also agree with the majority that the meal allowance must be included in petitioner's income and is not excludable under section 119 of the Code. Section 119 is clearly concerned with "meals in kind," which these are not; the legislative history mandates such a conclusion. And, as stated in section 61(a) and recognized in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955), and *Commissioner v. LoBue*, 351 U.S. 243 (1956), gross income means all income from whatever source derived. Here petitioner had complete, unfettered discretion as to how the allowance would be used. Under these circum-

879 (D. Minn. 1965); *United States v. Keeton*, 383 F. 2d 429 (10th Cir. 1967), affg. 256 F. Supp. 576 (D. Colo. 1966).

[3] Sec. 120, I.R.C. 1954; H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 19, A39-A40 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 19, 191 (1954); Technical Amendments Act of 1958, Pub. L. 85-866, 72 Stat. 1607; H. Rept. No. 775, 85th Cong., 1st Sess. (1957), 1958-3 C.B. 817; S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 935-36; Conf. Rept. No. 2632, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 1205.

stances I do not believe it makes any difference whether the amount paid to petitioner was intended as additional compensation or was made to in some way accommodate the employer. It is taxable income under section 61 unless specifically excluded under some other provision in the Code.

But I respectfully disagree with the majority in its conclusion that the cost of petitioner's meals are deductible only to the extent that they are eaten while away from home overnight, under section 162(a)(2). In my opinion petitioner's cost of meals eaten while on active duty under circumstances which made him subject to call at all times should be considered ordinary and necessary expenses of his business of being a State trooper, deductible under section 162(a) to the extent he can substantiate the expenditures for that purpose. In other words I would not consider these to be travel expenses, but rather to be ordinary and necessary expenditures required as a part of petitioner's duties, for the convenience of his employer.

"Over the years we have held on more than one occasion that a taxpayer may be in the trade or business of being an employee." *David J. Primuth*, 54 T.C. 374, 377 (1970). Thus, I conclude that petitioner's status as a New Jersey State trooper rose to the dignity of being a trade or business. In addition, I do not perceive the problem presented here to be whether petitioner's meal expenses may be characterized as "ordinary and necessary" within the meaning of section 162(a). I assume that the expenses were "necessary" in the sense of being "appropriate and helpful," and that they were "ordinary" in the context of "life in all its fulness," *Welch v. Helvering,* 290 U.S. 111, 113, 114-115 (1933).

The inquiry here is whether sufficient nexus existed between these expenses and the "carrying on" of petitioner's trade or business to qualify them for deduction under section 162(a), or whether they were in essence personal or living expenses and nondeductible by virtue of section 262, cf. *Louis Drill,* 8 T.C. 902 (1947). I consider the expenses to have a dual character, partly business and partly personal, and their tax treatment depends upon which aspect outweighs the other. Cf. *George A. Papineau,* 16 T.C. 130, 131 (1951).

I think it is clear that the circumstances under which petitioner was required to take his meals were established for a substantial noncompensatory business reason of the employer in order to have petitioner and other State troopers available for

emergency call during the meal period. It is equally clear from the record that emergencies were reasonably expected to occur, and actually did occur, which required petitioner to perform his job during his meal period. In addition the record indicates that a substantial motive of petitioner's employer in regulating its employees' meals was to reduce markedly the amount of time its employees used for eating, so that the employees would have more time to devote to their duties.

In sum, under the narrow circumstances before us, I find that petitioner has made a sufficient showing of business necessity for eating his meals on the job to take his expenses therefor out of the ambit of section 262 and to qualify them for a deduction under section 162(a). As said in *Arthur Benaglia*, 36 B.T.A. 838 (1937), the meals were not eaten on the job for petitioner's "personal convenience, comfort, or pleasure, but solely because he could not otherwise perform the services required of him." I find that the eating of his meals while on duty and at the site of his duty was a necessary and required part of this petitioner's business and the cost of those meals was an ordinary and necessary expense of his business. The fact that personal needs of petitioner were also satisfied was an incident of his business. Cf. *Gunnar Van Rosen*, 17 T.C. 834, 838 (1951).

I believe the allowance of deductions to employees of amounts they can prove were spent for meals taken, of necessity, on the job is more compatible with the structure of our taxing system than the exclusion from income of the entire allowance received for subsistence. This finds support in section 62(2)(A) of the 1954 Code which, in defining "adjusted gross income," permits an employee to deduct from gross income the deductions allowed by part VI (which includes section 162(a)) "which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer."

I recognize that my conclusion may be inconsistent with the conclusions of this Court on this point in *Charles H. Hyslope*, 21 T.C. 131 (1953), and *Robert H. Saunders*, 21 T.C. 630 (1954), reversed by the Third Circuit, *supra*. However, I think there have been enough changes in the approach to the deductibility of employee expenses since those cases were decided to justify taking

another look at the application of our conclusions to the particular factual situation here involved.

STERRETT, *J.,* dissenting: It has long been recognized by Congress that all amounts paid by an employer to, or on behalf of, an employee are not includable in the gross income of the employee. Secs. 101, 105, 106, 107, 112, 113, 117, and 119. Such specific exclusions are not exhaustive. *Rudolph v. United States,* 370 U.S. 269, 274 (1962).

The courts have long agreed that everything of value received by an employee from his employer does not represent income. *Clifford D. Jones v. United States,* 60 Ct. Cl. 552 (1925) (quarters allowance for Army officer); *Bercaw v. Commissioner,* 165 F. 2d 521 (4th Cir. 1948) (quarters allowance for Army officer); *Saunders v. Commissioner,* 215 F. 2d 768 (3d Cir. 1954) (meal allowance for State police); *Diamond v. Sturr,* 221 F. 2d 264 (2d Cir. 1955) (food and lodging to employee while on duty at mental institution); *United States v. Barrett,* 321 F. 2d 911 (5th Cir. 1963) (meal allowance for State trooper); *United States v. Gotcher,* 401 F. 2d 118 (5th Cir. 1968) (expense paid trip to Germany); *Arthur Benaglia,* 36 B.T.A. 838 (1937) (meal and lodging for hotel manager); *John E. Cavanagh,* 36 T.C. 300 (1961) (reimbursement for food and lodging incurred because of move).

It is worth noting that all of the above cases reach the identical conclusion, that the item of value did not represent income to the recipient, based upon an analysis of section 61, or its predecessor section 22(a) of the 1939 Code, and *not* upon any specific exclusionary provision. It is also worth noting that, while some of the cases cited above involve payment in kind and some payment in cash, the form of payment is not controlling. Any distinction based upon this distinction was rejected by the *Saunders* case:

Admittedly, the payment of cash to an employee is normally compensatory and probably more obviously so than a payment in kind. Nevertheless, just as an employee is often furnished tangible property which cannot be regarded as compensation, an employee may be furnished cash which is not compensation. [215 F. 2d at 771.]

The respondent himself, as early as his Regs. 45 which were in effect in 1920, ruled in article 33 thereof that living quarters furnished an employee for the convenience of the employer did

not represent income. During this period the Revenue Service had held that in varying situations amounts furnished to employees in cash or in kind need not be included in their respective gross incomes.[1]

In 1940 the regulations promulgated earlier were amended in relevant part to read as follows:

> If a person receives as compensation for services rendered a salary and in addition thereto living quarters or meals, the value to such person of the quarters and meals so furnished constitutes income subject to tax. If, however, living quarters or meals are furnished to employees for the convenience of the employer, the value thereof need not be computed and added to the compensation otherwise received by the employees. [T.C. 4965, 1940-1 C.B. 13, 14.]

This regulation was interpreted by the respondent in later publications in which he explained that the "convenience of the employer" rule should not be applied in those situations in which it is evident from the other circumstances that the receipt of the quarters and meals represented additional compensation, and that the rule would be met if they were required to be accepted by an employee so that he could properly perform his duties. Mim. 5023, 1940-1 C.B. 14; Mim. 6472, 1950-1 C.B. 15.

The common theme, the rationale for all the foregoing exclusions, is that amounts paid to an employee for the convenience of the employer and not intended to be compensatory are not includable in income. For this cause of action to come within this framework we believe the determination that must be made is whether the meal allowance was furnished to the petitioner for his services or whether it was furnished to him so that he would eat in the manner prescribed. See *Clifford D. Jones v. United States, supra* at 570. If, after a review of the evidence in the record, the latter determination prevails, the amounts furnished should not be included in gross income.

The court in *Saunders* was faced with facts, as the majority has noted, "not substantially different from those involved in the instant case." Using language from respondent's own explanation

---

[1] See O.D. 11, 1 C.B. 66 (1919), an American Red Cross volunteer receiving maintenance should report as income only the excess, if any, of the maintenance allowance over actual living expenses; O.D. 265, 1 C.B. 71 (1919), "Board and lodging furnished seamen in addition to their cash compensation is * * * supplied for the convenience of the employer and [its] value * * * is not required to be reported in such employees' income tax returns"; O.D. 514, 2 C.B. 90 (1920), "Supper money" paid to an employee who performs extra labor after regular business hours for the convenience of the employer does not represent additional taxable income.

of the regulations it said: [2]

> Since it is not "evident" to us that the rations allowance was furnished as compensation, we should next determine, as indicated by Mimeo 5023, whether Saunders was "required to accept such * * * meals in order to perform properly his duties" and thus whether the rations allowance was furnished for the convenience of the employer so as not to be taxable. * * * [215 F. 2d at 774.]

The court then went on to find that the meal allowance was so furnished and excluded it from gross income.

It is a historical fact that New Jersey provided its troopers with meals before switching to the meal allowance program. This decision was based on the hard realities of economics and efficiency. The majority opinion has made a finding of fact that "The meal allowance was not intended to represent additional compensation," [3] leaving as the sole determining factor whether the meal allowance was paid to the petitioner for the convenience of the employer.

Police are engaged in a unique occupation, one that deals with public safety—a line of work that by its very nature breeds emergencies at any time of day or night. The interests of the employer, the State, in furtherance of its responsibility for the public safety, demand that it require its troopers to eat when, where, and for a duration that does not jeopardize the employer's responsibility to the public. The State adopted the meal allowance system to assist it in carrying out this responsibility. Surely this decision is within the employer's prerogative. See also *United States v. Keeton*, 256 F. Supp. 576, 580 (1966), affd. per curiam 383 F. 2d 429 (10th Cir. 1967); sec. 1.119-1(a)(2)(ii)(C), Income Tax Regs.

It is difficult to conceive of a situation where an employee must so clearly take his meals at the convenience of his employer. This conclusion with respect to the convenience of the employer is supported by the discussions in *Barrett v. United States, supra; United States v. Morelan*, 356 F. 2d 199 (8th Cir. 1966); *United States v. Keeton, supra;* and *Tony M. Smith v. United States,* (N.D. Miss. 1974, 35 AFTR 2d 75-345, 75-1 USTC par. 9184),

---

[2] See also the Fifth Circuit's statement in *United States v. Barrett,* 321 F. 2d 911, 913:
"We find ourselves in accord with Saunders: the 'convenience of the employer' test is the key criterion in determining whether or not payments are income. * * *"

[3] In this connection compare *Stephen L. Zolnay,* 49 T.C. 389, 396 (1968), where in the context of the exclusion for scholarship authorized by sec. 117 the issue was stated "Was the taxpayer paid to work or paid to study?"

on appeal (5th Cir.), each in the context of meal allowances for State troopers. See also sec. 1.119-1(a)(2), Income Tax Regs.

Turning now to a few brief comments on the majority opinion, the citation by the Third Circuit of its *Saunders* decision in *Jacob v. United States,* 493 F. 2d 1294, 1297 (3d Cir. 1974), with specific reference to the convenience of the employer doctrine seems to me to be a clear reaffirmation of that doctrine long after the enactment of section 119. The Third Circuit clearly implied that the test survived the enactment of the 1954 Code. I also do not understand how the majority can construe the language[4] in the committee reports dealing with the prospective section 119 as meaning "that the only exclusion for meals and lodging intended by Congress to be available to any taxpayer other than members of the Armed Forces after the enactment of the 1954 Code were meals and lodging excludable under the provisions of section 119." After all there always have been more employers in the United States whose convenience must be served than the military services.

In conclusion, petitioner has received a cash allowance in lieu of meals previously provided by the State. Petitioner has shown that it was not compensatory, was required to be received primarily for the benefit of his employer so that he could properly perform his duties, and additionally that it was spent for the purpose paid. As such we believe the determination must be made in petitioner's favor. I would not include the cash meal allowance in petitioner's gross income.

FORRESTER, TANNENWALD, GOFFE, HALL, and WILES, *JJ.,* agree with this dissent.

---

[4] "Therefore, any cash allowance for meals or lodging received by an employee will continue to be includible in gross income, as under existing law, to the extent that such allowance constitute compensation. [H. Rept. No. 1337, to accompany H.R. 8300, 83d Cong., 2d Sess. (1954).]"